# WHEELING.

## MITCHELL & ROMINE *v.* DAWSON *et als.*

Submitted June 11, 1883—Decided December 8, 1883.

A. being the absolute owner of a tract of land by a duly recorded title, sells and conveys the same to B. who is put in possession but the conveyance to him is never recorded; subsequently, B. resells the land to A. and gives him his title-bond for a conveyance and puts him in possession, but makes him no deed; A. gives B. his bonds for the purchase-money which is never paid; while A. is so in possession he sells and conveys the land to C. for a valuable consideration without notice of B.'s equitable vendor's lien until after he had received his deed and paid the greater part of his purchase-money to A. HELD:

C. took the land discharged of B.'s equitable lien except as to that part of the purchase-money still due from him to A. at the time he received notice of B.'s lien; and as to such unpaid part both C. and the land are responsible to B., but no farther.

The facts of the case are stated in the opinion of the Court.

*T. H. Harrison* for appellant.

*John J. Davis* for appellee.

SNYDER, JUDGE:

This suit was brought October 12, 1876, in the circuit

court of Harrison county by Jesse Mitchell and John D. Romine against Edward Dawson, Daniel Stout and others to subject a tract of about ninety-four acres of land situate on Rice's run in said county to the payment of a debt alleged by the plaintiffs to be an equitable vendor's lien thereon. The circuit court held that said land had passed into the hands of a *bona fide* purchaser who had paid all the purchase-money due from him except twenty-five dollars before he had any notice of the plaintiff's claim and that the plaintiffs were not entitled to relief against said land or the purchaser, except as to the twenty-five dollars which it decreed him to pay. From this decree the plaintiff, Romine, obtained an appeal from a judge of this Court.

The facts as claimed by the appellant are in substance as follows: Prior to November 1853, William Dawson died intestate seized of certain lands of which the ninety-four acres involved in this suit are a part. In the partition of said lands among the children of said Dawson said ninety-four acres, in different lots, were assigned to four of his children as their interests in said lands. These four children afterwards and prior to March 1, 1855, sold and conveyed this ninety-four acres to the defendant Edward Dawson, who was also one of said children. By deed dated March 1, 1855, said Edward conveyed two of said interests, and by written agreement of same date sold and bound himself to convey the other two interests, making the whole of said ninety-four acres to Lemuel Dawson, another of said children. Neither the said deed nor the said agreement was ever recorded. The said Lemuel was put in possession of said land and lived on it from that time until March 26, 1858, when he re-sold it to said Edward at the price of one thousand eight hundred and eighty dollars, payable in eight annual instalments for which said Edward executed to Lemuel his bonds, a part of which he paid, and the others were assigned to other parties by the said Lemuel, and are the same now sought to be enforced against said land in this suit. The said Lemuel executed and delivered to said Edward his title-bond, dated on the said 26th day of March, 1858, binding himself to give possession of the land to Edward April 15, 1858, and to make him a deed for the land on or after the first of September

following. No deed was ever made. The said Edward was put in possession of the land and so continued until August 22, 1873, at which date he sold and by deed, in consideration of two thousand five hundred dollars, conveyed said land to the defendant Daniel Stout. This deed was duly recorded December 1, 1873. The defendant Stout was at once placed in possession of said land and is still in the possession of it, and has paid all the purchase-money therefor. The appellant charges that the said Stout had notice of said vendor's lien before and at the time he purchased said land from said Edward. This is, however, positively denied by said Stout. He denies that he had any notice of any lien on said land secret or otherwise until after he had made his purchase and paid all the purchase-money except twenty-five dollars. The evidence is very meagre and improbable on the charge of notice to said Stout, and in my opinion entirely fails to establish any notice to him whatever until after he had paid the purchase-money in full except said twenty-five dollars.

It will be observed that the deed to Lemuel as well as the title-bond by which he sold the land to Edward is unrecorded. So far as the records disclosed, Edward was all the time the holder of the legal title and the record of his title gave no notice of any outstanding equity. By our registry acts all unrecorded deeds and contracts are void as against creditors and subsequent purchasers for valuable considerations without notice—Sec. 5 ch. 74 Code, p. 474. The deeds and contracts being void, as a necessary consequence any lien or equity attaching to or arising out of such deeds and contracts must also be void.

At the time of the purchase by the appellee, Stout, his vendor Edward was in possession of the land and had been so in possession for five years prior thereto. The records of the county showed that he had the legal title and there was nothing whatever in his title to give notice of any equity in any other person. The case would have been essentially different if Stout had been the purchaser of an equitable instead of a legal title. Such was the case of *Yancey* v. *Mauck*, 15 Gratt. 300. But here Edward had so far as the records showed the legal title and was in the actual possession of the land. The lien of the appellant was a secret invisible lien

known only to Lemuel and Edward Dawson and those to whom it may, in fact, have been communicated. To the world Edward appeared to hold the land divested of any lien whatever. In the absence of actual notice, Stout, the purchaser from him had the legal right to assume that he was the owner of the equitable as well as the legal title. In *Moore* v. *Holcomb*, Carr, Judge, quoting from *Bailey* v. *Greenleaf*, 7 Wheat. 57, says: "The lien of the vendor, if in the nature of a trust, is a secret trust, and although to be preferred to any other subsequent equal equity, unconnected with a legal advantage, or equitable advantage which gives a superior claim to the legal estate, will be postponed to a subsequent equal equity connected with such advantage. These remarks seem to me very sound; and beyond the limits here established, I am unwilling to extend the equitable lien." 3 Leigh. 601. In the same case, Tucker, P., says: "Where the vendee of land still retains the estate it is clearly liable for the whole of the unpaid purchase-money by virtue of the vendor's lien. Where he has sold to a sub-vendee, and the title has been made to him, and the money paid before notice of the orignal vendor's lien, the sub-vendee holds discharged of that lien. Where, however, a part of the purchase-money is unpaid by the sub-vendee, the land in his hands is liable for that unpaid portion, but for no more. The equity is that he shall pay to the original vendor whatever he himself yet owes to his own vendor. If he owes anything, he, and his land are discharged, upon his paying up that to the orignal vendor's demand; and if he owes nothing, neither himself nor his land is in anywise responsible." 3 Leigh 606. See also, *Brawley* v. *Catron*, 8 Leigh 526; *Murray* v. *Lylburn*, 2 Johns. Ch. 441.

While the cases in which these doctrines were announced were not of precisely the same character as the case at bar, yet the principles involved in both instances are the same and they fully dispose of this case. The decree of the circuit court, having been in accordance with these principles, which we entirely approve, the same must be affirmed with costs to the appellee, Stout, and thirty dollars damages.

AFFIRMED.