# CHARLESTOWN.

POE *et al.* *v.* PAXTON'S HEIRS *et al.*

Submitted June 22, 1885.—Decided October 2, 1885.

1. The vendor of an equitable right or title to land retains an implied lien on it for the consideration, whenever under the same circumstances the vendor of the legal title would hold an equita-

ble lien. The same principle and reason apply to both cases, except that our statute—sec. 1, ch. 75 of Code—qualifies the latter, while it has no effect upon the former. (p. 609.)

2. Such implied equitable lien of the vendor of an equitable title or estate, where the contract of sale is unrecorded, will be enforced by a court of equity against the vendee, his heirs, purchasers with notice and his unsecured or general creditors, but not against purchasers for value without notice, nor against mortgage, or trust-creditors with or without notice. (p. 611.)

3.—*Quære.*—Is not such equitable vendor's lien paramount also to the liens of the judgment-creditors of the vendor? (p. 612.)

The facts of the case are stated in the opinion of the Court.

*W. A. Anderson* and *McCorkle & McCorkle* for appellant.

*W. S. Laidley* for appellee.

Snyder, Judge :

This and other suits in equity heard with it, were brought in the circuit court of Kanawha county against the administrator and heirs of J. G. Paxton, deceased, to subject the real estate of said Paxton to the payment of his debts. After sundry references and reports had been made and decrees entered ascertaining and fixing the priorities of said debts, B. J. Jordan filed his petition in the suits asserting that his debt therein mentioned, and which had been theretofore reported as a non-preferred and unsecured claim, should be allowed and declared to be a specific lien on one-ninth of the tract of 1764 acres of land in Fayette county, known as the "Crescent" property. The basis of this claim of Jordan, as appears from the said petition and other parts of the record, is as follows :

By written contract, dated December 16, 1856, between James G. Paxton of the one part and B. J. Jordan and others of the other part, the said Paxton sold, and agreed to convey by deed with general warranty within ninety days from said date, to the said Jordan and others the undivided one-third part of a tract of 1764 acres of land situate in Fayette county, at the price of $9,000.00 to be paid in five equal instalments at four, six, nine, twelve and fifteen months from

date. The contract provided that the said Jordan was to have one-third of said purchase or one-ninth of the whole tract which would be 196 acres and was to pay therefor $3,000.00 as above specified. Accordingly Jordan paid four instalments of $600.00 each of the purchase-money, making in all $2,400.00, leaving $600.00 still unpaid.

Subsequently, on May 1, 1867, the said Paxton and Jordan made the following agreement in regard to said Jordan's interest in said purchace, viz:

" That the contract of December 16, 1856, for the sale of an interest in Kanawha coal land to B. J. Jordan is hereby cancelled, and the amount paid by said Jordan to said Paxton is to be refunded, with interest from the time the same was paid, unless the said Paxton has paid the same already for the benefit of said Jordan."

Upon a reference to a commissioner to ascertain the facts in regard to said Jordan's claim, the commissioner reported that neither of the contracts aforesaid had ever been recorded in Fayette county, that the $2,400.00 paid by Jordan to Paxton had never been refunded by the latter and was still due to the said Jordan; that said debt did not constitute an equitable or specific lien on any portion of said land as against the creditors of said Paxton, and that it must be treated and held to be an unsecured debt to be paid ratably with the other general debts due from the estate of said Paxton. Jordan excepted to the report upon the ground that the commissioner did not report his said debt as a specific lien on the interest purchased by him in said 1,764 acres of land. The court by its decree of July 13, 1883, confirmed said report and decreed that said debt was not a specific lien upon any part of said land, but that it was an unsecured debt and payable only as such along with the general creditors of the estate of said Paxton. From this decree Jordan obtained this appeal.

The only question sought to be determined by this appeal is, has the appellant a specific or equitable lien on any part of the tract of 1,764 acres of land for his debt and its interest?

It is elementary law, that when a vendor sells land on time he has a lien on the whole subject sold for his unpaid purchase-money. 2 Story's Eq. Jur. § 1218.

The only modification of this general doctrine is, that by our statute, when the vendor *conveys* the land by deed he shall not thereby have a lien for his unpaid purchase-money unless such lien is expressly reserved on the face of the conveyance. Sec. 1, ch. 75 Code, p. 475.

This statute has no application, it will be perceived, where no conveyance is made by the vendor. By retaining the legal title the vendor preserves his lien unaffected by the statute. It is clear, therefore, that under the sale made by Paxton to Jordan, the former by retaining the legal title preserved his lien for the unpaid purchase-money. This much can not be disputed. The material enquiry in this cause is whether or not the contract of May 1, 1867, between these parties was in effect a re-sale of the land by Jordan to Paxton; and, if so, does a lien for the money agreed to be refunded attach in that case ?

Jordan by his purchase became the owner of the land in equity and the vendor, Paxton, became his trustee of the legal title. By the terms of his contract Jordan was entitled to compel Paxton to convey him the legal title within ninety days from and after the date of the sale which was before all the purchase-money became due. Suppose then after Jordan had paid the $2,400.00 of the purchase money, Paxton had conveyed the land to him; and after this had been done, the parties had entered into the contract of May 1, 1867, for re-vesting the title in Paxton, the latter could not have required Jordan to re-convey the legal title without re-paying the purchase money. This latter transaction in that event would, it seems to me, have been of necessity treated as a re-sale of the property by Jordan to Paxton and all the incidents of a sale would have attached to it including the equitable lien for the unpaid purchase-money. Because the transaction here relates to an equitable and not a legal title, can not certainly affect the substance of it in a court of equity. It was held in *Stuart* v. *Hatton*, 3 J. J. Marsh. 178, that, "One who sells an equitable right to land, retains a lien on it for the consideration, whenever, under the same circumstances, the vendor of the legal title would hold an equitable lien. The same principle and reason apply to both cases." This seems to be the settled law on the subject in Kentucky.

*Lejon* v. *Alexander*, 7 J. J. Marsh. 288–9 ; *Galloway* v. *Hamilton*, 1 Dana 576 ; and it has also been so decided in Maryland.—*Inglehart* v. *Armizer*, 1 Bland 519, 526. This doctrine I regard as reasonable and it has to some extent been recognized and acted upon by the courts of Virginia and this State.—*Moore* v. *Holcomb*, 3 Leigh 601 ; *Mitchell* v. *Dawson*, 23 W. Va. 86.

The principle is, that this lien exists in equity presumptively, when the purchase-money, or any part of it, remains unpaid ; and it is for the vendee to show such circumstances as repel the presumption or rebut the equity. 1 Lead. Cas. Eq. (top p.) 272. "*Prima facie* the purchase-money is a *lien*, and it lies on the vendee to show the contrary ; and the death of the vendee does not alter or defeat the *lien*." *Garson* v. *Green*, 1 Johns. Ch'y 208 ; *Thompkins* v. *Mitchell*, 2 Rand. 428 ; *Redford* v. *Gibson*, 12 Leigh 332.

Upon a fair construction of the contract of May 1, 1867, there is nothing to indicate a purpose on the part of Jordan to waive this *prima facie* lien for the purchase-money paid by him and which Paxton bound himself therein to refund, and there is no evidence in the record of any facts or circumstances even tending to show such waiver. The burden of showing that it was not the intention of the parties that the lien should attach being upon the vendee, in the absence of any such implication in the contract itself or of extraneous proof, the lien according to the authorities must be held to exist.

The contract here being in relation to an equitable and not a legal estate, our statute which requires the grantor in a deed to retain an express lien in the conveyance has no application. It may, therefore, be considered that the contract of May 1, 1867, was an executed and not an executory agreement, that it was in fact, and intended by the parties to be an absolute cancellation of the contract of December 16, 1856, and a complete re-conveyance of the equitable title of Jordan to Paxton, and still, according to the rules of equity, the lien for the purchase-money, which Paxton bound himself by that contract to refund to Jordan, would attach and be unaffected by the statute.

The next enquiry is against whom will this equitable lien

be enforced ?   The general rule is, that such lien will prevail and be enforced not only against the purchaser, but against his heirs, and all persons claiming under him with notice, although for a valuable consideration.     2 Sug. on Vendors 22.

The rule deduced from the Virginia decisions is stated in 4 Min. Inst., Part I., pp. 67–8, as follows :

"A vendor of land is considered in equity as having a lien on the land for the purchase-money unpaid, not only as against the vendee himself, but also against all persons claiming under him, unless they are purchasers *for value* and *without notice*, save when the lien has been intentionally waived by consent of parties which it is for the vendee to show,"—citing 2 Story's Eq., sec. 1217 ; *Beïrne* v. *Campbell*, 4 Grat. 125 ; *Kyles* v. *Tait* 6 *Id.* 48 ; *Stephens* v. *Hutchinson*, *Id.* 147 ; *McCandlish* v. *Keene*, 13 *Id.* 621, and other cases.   The author then adds : "Though recognized, this rule has not been regarded favorably by the courts, because violative of the policy which seeks to discourage *secret liens*,"—citing *Moore* v. *Holcomb*, 3 Leigh 597 ; *Brawley* v. *Catron*, 8 *Id.* 522 ; *Bayley* v. *Greenleaf*, 7 Wheat. 46 ; and *McCandlish* v. *Keene*, 13 Grat. 621–2.

In *Bayley* v. *Greenleaf, supra*, the court decided that : "A vendor can not enforce his lien for unpaid purchase-money against trustees for creditors of the vendee to whom the land has been conveyed without notice of the lien."   The title sold in this case, on account of which the vendor asserted his lien, was an equitable title and the conveyance to the trustees appears not to have been recorded, and, therefore, the facts are very similar to the case at bar.   See also, *Shirley* v. *Shirley*, 7 Blackf. 452; *Conner* v. *Banks*, 18 Ala. 42 ; *Griffith* v. *Depew*, 3 Marsh. 179.

In regard to the existence of this lien as against creditors, the cases are not uniform.   It appears to be agreed that it does not prevail against a *bona fide* mortgagee without notice, for the reason that he is regarded as a purchaser in equity. *Duval* v. *Bibb*, 4 H. & M. 113; *Clark* v. *Hunt*, 3 J. J. Marsh. 553; *Moore* v. *Holcomb*, 3 Leigh 597.

In North Carolina, it was decided that it was subordinate to the rights of judgment-creditors.   *Harper* v. *Williams*, 1 Dev. & Bat. 379 ; *Id.* 32, 35.   It is settled in Tennessee that such lien will not be sustained against judgment-creditors. *Roberts* v. *Rose*, 2 Humph. 145.

After a full review of the cases the doctrine is stated in 1 Lead. Cas. Eq. (top p.) 279, as follows : "The true nature of the claim appears to be this. It had its origin in a country were lands were not liable, both during and after the life of the debtor, for all personal obligations indiscriminately, including debts by simple contract ; and it seems to be an original and natural equity, that a creditor whose debt was the consideration of the land should, by virtue of that consideration, be allowed to charge the land upon failure of personal assets: It is not a lien until the bill has been filed to assert it ; before this is done, it is a mere equity or capacity to acquire a lien and to have satisfaction of it. When a bill is filed it becomes a specific lien. This equity no doubt dates back to the time of the conveyance and to the origin of the debt. As soon as the debt for the purchase-money exists, though to be paid *in futuro*, the equity to come upon the land attaches to it. Therefore, it prevails against dower, and all other estates which the law considers as in privity with that of the vendee ; it prevails against all who take with notice, actual or legal, for all such persons are considered as standing in the situation of the vendee. In such cases the dispute is between the vendor, on the one hand, and the vendee and his representatives on the other. But where subsequent lien-creditors intervene, the contest is no longer between the vendor and vendee ; it is between third persons contending for his estate. It depends no longer on the equity of the one party as against the vendee and those in privity with him ; it depends upon the relative equities and rights of the disputants, in a comparison with one another. If this be the correct view of the nature of the vendor's claim the question is at an end. Lien-creditors will supplant one who, though he had a right in equity to charge the land through his own *laches* and default, failed to secure a lien. Lien-creditors are entitled to the whole estate of their debtor, subject only to prior specific liens, legal or equitable ; if the vendor's equity be neither a specific lien, nor a trust qualifying the estate in equity, the right of lien-creditors is paramount to it. The principle then is, the vendor's equity, though prevailing against the vendee and all claiming through him, is subordinate to the rights of subsequent lien-creditors with or without notice."

In *Gilmore* v. *Brown*, 1 Mason 192, 221, Story J. says: "The lien of the vendor for the purchase-money, is not of so high and stringent a nature as that of a judgment-creditor, for the latter binds the land according to the course of the common law; whereas the former is a mere creature of a court of equity, which it moulds and fashions to its own purposes. It is in short, a right which has no existence, until it is established by the decree of a court in the particular case, and it is then subservient to all other equities between the parties, and enforced in its own peculiar manner, and upon its own peculiar principles."

The necessary conclusion from the views thus stated is, that this implied equitable lien for unpaid purchase-money can not prevail against purchasers for value without notice, nor against liens of mortgages, trust or judgment-creditors, but that it will be enforced only against the vendee, his heirs, parchasers with notice and the general or unsecured creditors of the vendor. This is all that is claimed by counsel for the appellant in this cause and, I think, it is all that he is entitled to. *Moore* v. *Holcomb*, 3 Leigh 597. But as some members of this Court are unwilling to decide definitly, (as such decision is not asked and does not appear to be material in this cause, so far as the record before us discloses,) that this equitable lien is not paramount also to the liens or rights of judgment-creditors of the vendor, that question is left undecided.

For the foregoing reasons the said decree of July 13, 1883, is reversed, and this cause is remanded to the circuit court for further proceedings there to be had in accordance with the principles announced in this opinion.

REVERSED. REMANDED.