[Civ. No. 2235.  First Appellate District.—December 31, 1917.]

## J. C. FERGER, Respondent, v. HARRY W. ALLEN et al., Appellants.

VENDOR'S LIEN—NATURE OF.—It is not essential to the right to claim a vendor's lien that an intention on the part of the vendor to create and retain unto himself the right to such lien should be expressly declared. The right is given in equity and in law by the very nature of the transaction, and consequently exists without regard to the express agreement of the parties.

ID. — KNOWLEDGE AND ACQUIESCENCE IN MORTGAGE OF PROPERTY — DEFEAT OF LIEN.—In view of section 3048 of the Civil Code, declaring that a vendor's lien is valid against everyone claiming under the debtor except a purchaser or encumbrancer in good faith, the right to claim such a lien is defeated by the vendor's knowledge of and acquiescence in the hypothecation of the property, as against the mortgagee.

ID. — ASSIGNMENT FOR BENEFIT OF CREDITORS — EXTINGUISHMENT OF LIEN.—An assignment for the benefit of creditors and a conveyance made thereunder prior to any endeavor on the part of the vendor to declare and establish his lien will prevail over and operate to defeat the right to claim the lien where the creditors become subscribing parties to the assignment and thereby accept the same by assenting to and claiming the benefit of its provisions, since they assume by virtue of the assignment the character of lien claimants.

APPEAL from a judgment of the Superior Court of Fresno County.  H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

N. Lindsay South, for Appellants.

U. Grant Hayden, for Respondent.

LENNON, P. J.—This is an appeal from a judgment in favor of plaintiff quieting title as against the defendants to certain described real property situate in the county of Fresno.

The facts of the case as revealed by the pleadings and proof are substantially these: The defendants sold the real property in question to one Heimbach for the agreed price of nine hundred dollars, and upon a conveyance of the prop-

erty by deed dated November 25, 1912, Heimbach paid to the defendants three hundred dollars in cash on account of the purchase price, and for the balance due thereon gave his unsecured note, dated November 27, 1912, to the defendants in the sum of six hundred dollars. This sum by the terms of the note was to be paid in installments "at the rate of $18 a month." It was Heimbach's desire to build a home upon the property. This desire was made known to the defendant Harry W. Allen, and the conveyance was accordingly made to Heimbach absolute in form to enable him to obtain a loan upon the property of a sum sufficient to defray the cost of the desired building. Thereafter Heimbach, with the tacit consent of said defendant, executed a deed of trust, dated December 11, 1912, conveying the property in question to the Pacific States Savings and Loan Company as security for a loan of two thousand five hundred dollars, which sum, it seems to be conceded, was expended in the erection of a building upon the property. Thereafter Heimbach became financially involved as a result of the business transactions of the Heimbach Company, of which he was a copartner, and to such an extent that the plaintiff Ferger and other creditors of the copartnership attached certain property of Heimbach. The attachment, however, was subsequently released upon Heimbach executing an assignment, dated July 17, 1913, of his property, real and personal, including the real property in question, to the plaintiff Ferger, as trustee for the benefit of Heimbach's general unsecured creditors.

This assignment was made pursuant to and as a part of a contemporaneous trust agreement executed and signed by Heimbach and some thirteen of his general unsecured creditors, wherein it was agreed that each of the creditors named thereby assigned the accounts due and owing them from Heimbach of the date of the agreement to the plaintiff Ferger for collection, and further agreed that the proceeds thereof were to be distributed *pro rata* among the creditors after paying preferred claims.

Simultaneously with the execution of the assignment and accompanying the trust agreement as a part thereof and pursuant to its terms, Heimbach and his wife executed to plaintiff Ferger a mortgage of even date on the property in question, which was duly recorded July 22, 1913.

On the nineteenth day of February, 1914, Heimbach and his wife, for the stated consideration of ten dollars, but in fact for the purpose of enabling the plaintiff Ferger to consummate negotiations for the sale of the property pursuant to the terms of the assignment and trust agreement, executed to the plaintiff Ferger a quitclaim deed to the property in question, and on January 13, 1915, the plaintiff Ferger instituted this action to quiet his title as against the defendants to the same property. On the 23d of June, 1914, the plaintiff Ferger, pursuant to the terms of an executory contract of purchase and sale, sold the property in question to one J. F. Cullen for the agreed price of four·thousand two hundred dollars, of which eight hundred dollars was paid in cash, and. the balance agreed to be paid in specified installments. This contract of purchase and sale was placed on record on June 27, 1914. On June 26, 1914, the defendant Harry W. Allen, upon behalf of himself and his wife, the defendant Claribel Allen, filed for record with the recorder of Fresno County their notice and claim of a vendor's lien upon the property in question.

The record contains some evidence which tends to show that the defendant Harry W. Allen, at all times prior to the formal declaration and recordation of the vendor's lien, and particularly at and before the execution of the assignment and trust agreement, had knowledge of the fact that Heimbach "was about to fail"; that Heimbach's creditors were about "to close him out"; and that he had been told by Heimbach that "he was going to turn the property over to Ferger as trustee for the benefit of his creditors."

The action was defended upon the theory that the defendants had an interest in the property superior to that of the plaintiffs by virtue of a vendor's lien, the creation and existence of which were in effect pleaded in the answer of the defendants by averments of the sale and the terms thereof to Heimbach of the property in suit. The subsequent formal declaration and recordation of the defendants' notice and claim of a vendor's lien were also pleaded in said answer, and a copy of the claim of lien as declared and recorded was attached to and specifically made a part of the answer.

The evidence does not support and is contrary to the finding that the defendants did not retain, and never intended to retain, a vendor's lien upon the property. Evidently this

finding was founded solely upon the theory that neither the negotiations and circumstances preceding and attending the transfer of the property from the defendant Harry W. Allen to Heimbach, nor the terms of the sale subsequently consummated, disclosed an express intention on the part of Allen to reserve and retain unto himself a vendor's lien for the unpaid portion of the purchase price.

The right to a vendor's lien upon land sold for the unpaid and unsecured portion of the purchase price as originally conceived in equity is now embodied in our statutory law, which gives the right to "one who sells real property . . . independent of possession for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer." (Civ. Code, sec. 3046.) It never was and is not now essential to the right to claim a vendor's lien that an intention on the part of the vendor to create and retain unto himself the right to such lien should be expressly declared. The right is given in equity and in law by the very nature of the transaction, and consequently exists without regard to the express agreement of the parties. (*Claiborne* v. *Castle*, 98 Cal. 30, [32 Pac. 807]; *Avery* v. *Clark*, 87 Cal. 619, [22 Am. St. Rep. 272, 25 Pac. 919]; *Moshier* v. *Meek*, 80 Ill. 79.)

The further finding of the trial court that it was the intention of the defendants to waive, and that they did waive, any lien as vendors which they might have had or claimed against the property in question, is assailed upon the ground that it is contrary to the evidence; and in this behalf it is asserted that this particular finding receives support in the evidence only in the fact that the defendants sold the property in question to Heimbach with knowledge that it was to be hypothecated for the purpose of procuring a loan with which to build upon the property.

The particular finding under consideration does not rest solely upon the fact stated. While it is true that such fact is specifically found, still the finding of waiver is a separate and distinct finding, which, while perhaps resting in part upon the preceding finding of the fact stated, is nevertheless neither expressly nor impliedly limited for support to that fact, but may be fairly said to be based upon all of the evidence in the case, which in addition to the fact stated shows, as we have previously pointed out, a conveyance of the prop-

erty to the plaintiff pursuant to the terms of a trust agreement to which Heimbach's general unsecured creditors were made parties by subscribing to the same and thereby claiming the benefits of the provisions which were incorporated therein for the adjustment and satisfaction of their several claims against Heimbach.

In addition to this fact the finding in question was doubtless rested in part upon proof of the fact that the property in question was, in keeping with the terms of the trust agreement and as a part thereof, further encumbered by the contemporaneous mortgage and the subsequent deed of the property to the plaintiff.

It is conceded, as indeed it must be, as against the Pacific States Loan and Trust Company, that the right to claim a vendor's lien was defeated by the defendant's (Harry W. Allen) knowledge of and acquiescence in the hypothecation of the property to that corporation. This concession doubtless was made in deference to the provisions of section 3048 of the Civil Code, which declare that a vendor's lien is "valid against every one claiming under the debtor, except a purchaser or encumbrancer in good faith." But while making this concession it is insisted, as we understand the contention for defendant, that the plaintiff Ferger in the capacity of trustee for the benefit of the creditors did not in law or in fact take the property under the trust conveyance either as a purchaser or encumbrancer in good faith and for value. Ordinarily and under a state of facts differing from those presented in the instant case this contention would prevail, for it seems to be the general and accepted rule that "the assignee of a voluntary assignment for the benefit of creditors stands in no better situation than the assignor. Neither he nor the creditors whom he represents are purchasers for a valuable consideration without notice as against prior equitable liens." (2 Kent's Com. 542 n.; *Haggerty* v. *Palmer,* 6 Johns. Ch. (N. Y.) 437; *Knowles* v. *Lord,* 4 Whart. (Pa.) 500, [34 Am. Dec. 525].) This being so, it follows, generally speaking, that a trustee claiming under a conveyance made to him for the benefit of creditors takes the property at the time of the execution of the conveyance subject to every equity which might then have been enforced against it in the hands of the debtor.

But this general rule is subject to the exception that an assignment for the benefit of creditors and a conveyance made thereunder executed prior to any endeavor on the part of the vendor to declare and establish his lien will prevail over and operate to defeat the right to claim the lien where the creditors, as did the creditors in the instant case, become subscribing parties to the assignment and thereby accept the same by assenting to and claiming the benefits of its provisions. The reason for this exception to the rule is rested upon the theory that general creditors are not transformed into encumbrancers in good faith and for value by the debtor's mere voluntary assignment of his property for their benefit, because it still remains for the creditors to exercise the option which they have either of accepting or rejecting the assignment, and until "they have elected to take under the deed the assignee is rather the trustee for the debtor than for them. When they have accepted the assignment by claiming or taking a benefit under it the assignee becomes their trustee, and they assume by virtue of the assignment the character of lien claimants." (*Green* v. *Demoss*, 29 Tenn. (10 Humph.) 372.)

This being so the present action, although instituted in the name of the plaintiff, was to all intents and purposes an action upon behalf of lien creditors represented by the plaintiff to quiet the title to the property in question as against the defendants alleged vendor's lien, and "where subsequent lien creditors intervene, the contest is no longer between vendor and vendee, it is between third persons contending for his estate. It depends no longer on the equity of the one party as against the vendee and those in privity with him. It depends upon the relative equities and rights of the disputants in comparison with one another. . . . Lien creditors will supplant one who though he had a right in equity to charge the land through his own laches and default failed to secure a lien. Lien creditors are entitled to the whole estate of their debtor subject only to prior specified liens, legal or equitable. If the vendor's equity be not a specified lien . . . the right of lien creditors is paramount to it. (*Poe* v. *Paxton*, 26 W. Va. 607.)

The record shows that the defendant Harry W. Allen, notwithstanding he had knowledge of the fact that the vendee was in failing financial circumstances, and was informed that

he was about to make an assignment of the property in question to the plaintiff for the benefit of creditors, failed to assert and prove his lien until the vendee's creditors had joined in and agreed to accept the provisions of the assignment, consequently it must be held that the defendant's right to the lien was, in so far as the lien creditors of the vendee were concerned, extinguished, and we take it that this is what the trial court meant by its finding that such lien had been "waived." This finding alone is sufficient to support the judgment.

The judgment is affirmed.

Richards, J., and Kerrigan, J., concurred.