# CHARLESTON.

## BLAIR v. MOUNTS.

Submitted January 18, 1896—Decided March 25, 1896.

1. DOWER—PRIOR LIENS—SUBROGATION.

 Where the owner of a tract of land has allowed the same to be incumbered by deeds of trust and judgment liens, and while it is in that condition he intermarries, and then he and his wife make a conveyance of the land to a third party, in which she did not effectively join, being then an infant, who, out of the purchase money, pays off and discharges said liens in order to relieve the property therefrom, he is entitled to be subrogated to the rights of the parties holding said liens, and such liens are paramount to said wife's right of dower on the decease of her husband.

2. SUBROGATION.

 The doctrine of subrogation is not applied in favor of one who has officiously and as a mere volunteer paid the debt of another for which neither he nor his property was answerable, but it will be applied whenever the person claiming its benefit has paid a debt for which another was primarily answerable, and which he was compelled to pay in order to protect his own rights and save his own property.

3. SUBROGATION.

The doctrine of subrogation is that one who has the right to pay and does pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other, and to indemnity from the fund out of which should have been made the payment which he has made.

4. DOWER—PRIOR LIENS—SUBROGATION.

Where the owner of land which is encumbered by trust liens, judgment liens, and liens for the original purchase money, which liens are paramount to the dower right of his wife in the event of his death, sells said land to a third party, who pays off and discharges these liens as a part of the purchase money, he is subrogated to the rights of said lienors, and, it said liens absorb the entire purchase money, said vendor's widow is not entitled to dower out of said purchase money.

H. K. SHUMATE, C. M. TURLEY and CAMPBELL & HOLT for appellant, cited 1 Scrib. Dow. (2nd Ed.) 519-35; 10 Am. & Eng. Enc. Law, 643; 2 Rob. 402; 1 Rand. 344; 10 W. Va. 321; 25 W. Va. 580; 15 W. Va. 666; 20 W. Va. 62; 57 Ill. 302; 8 Mass. 491; 10 Mass. 364; 4 Dane, Abr. 183, 676; 5 Johns. Ch. 482; 22 W. Va. 292; 5 Munf. 257; 12 Leigh, 264; 1 H. & M. 91; 3 H. & M. 322; 16 B. Mon. 114; 2 B. Mon. 125; 3 Harr. 387; 19 Ill. 545; 26 Ill. 526; 13 Ala. 843; 3 Stev. & Part. 447; 14 Ala. 370.

JOHN S. MARCUM for appellee, cited 1 Scrib. Dow. 550-554; 1 Wash. R. Prop. 239-241; 14 Pick. 98; 3 Ohio St. 76; 13 Mass. 227; 84 Am. Dec. 49; 5 Am. Dec. 229, note; 6 Johns. 290; Code, c. 65, ss. 1, 2; 47 Am. Rep. 418; 76 Am. Dec. 409; 20 Am. Dec. 205; 46 Mo. 514; 10 N. H. 500; 18 Ohio, 564; 58 Me. 271; 17 Mass. 564.

ENGLISH, JUDGE:

Ona Blair filed her bill on the first Monday in May, 1891, at rules then held for the Circuit Court of Logan county, against Moses Mounts, suing by her next friend, Joseph S. Blair, in which she claims to be entitled to dower in a tract of land containing one hundred and thirty eight acres, as the widow of S. S. Jackson, deceased.

She states in her bill that the said S. S. Jackson sold and conveyed to the defendant, Moses Mounts, said tract of

land, and supposes that she joined with her husband in making the deed for said land to defendant, but says that she has no distinct recollection of the fact. She, however, exhibits a copy of the deed with her bill, and says that at the time of the execution of said deed (the 15th day of February, 1889) she was an infant under the age of twenty one years, and that, having signed the same while in her infancy, it does not bind her, or bar her of her right of dower in and to said tract of land, and she revokes and repudiates her acts in executing said deed, and she prays that her dower may be assigned her therein.

On the 26th day of April, 1892, the said Ona Blair, having arrived at the age of twenty one years, filed her amended bill, in which she alleges that her deceased husband, S. S. Jackson, was in his lifetime possessed in fee, but not seised, of a certain tract of land containing two hundred and twenty five acres, situated in Logan county, W. Va., on Island creek, the legal title to which was then vested in one Samuel Jackson; that said tract of land was sold by said S. S. Jackson, in his lifetime, to the defendant, Moses Mounts, and was conveyed to said Mounts by Samuel Jackson, and a copy of the deed for same is filed, which describes the property. Plaintiff claims that she is entitled to dower in said last named tract of land, and asks that her dower therein may be assigned her, and that, having arrived at the age of twenty one years, she may be allowed to prosecute her suit in her own name.

The defendant, Moses Mounts, filed a demurrer to the plaintiff's original bill, which was overruled, and thereupon said defendant tendered and asked leave to file his answer to the plaintiff's original bill, to the filing of which the plaintiff objected. The court overruled the objection, and permitted the answer to be filed, and the plaintiff excepted in writing, which exceptions were considered by the court and overruled, and the plaintiff replied generally.

The defendant, in his answer, avers and charges that he paid and discharged liens and incumbrances and purchase money against said lands, setting forth the respective amounts and the parties to whom paid; that said liens and

incumbrances were against said lands, and created prior to the marriage between the plaintiff and S. S. Jackson, and that said lands were sold to defendant for the purpose of discharging the same, and that in pursuance of said agreement he paid off and discharged said liens, and that the amount thereof was the full value of said lands at the date of said purchase; and he charges that if the plaintiff be entitled to any dower in said lands it would only be in the surplus after the discharge of said liens and incumbrances; and that, if the plaintiff be entitled to any dower in said lands (which he denies) the same should be set apart to her in gross, and not assigned out of said lands; and that in that event he would be entitled to reimbursement therefor out of the estate of said S. S. Jackson, deceased; and that at the death of said S. S. Jackson he had personal estate over and above what was sufficient to pay his debts to the amount of one thousand dollars, and that said personal estate went into the hands of his administrator, and to which fund he calls for reimbursement of said dower interest if the said plaintiff be entitled thereto; and he asks that the administrator of said estate be made a party to the suit, and be compelled out of the funds in his hands to pay the amount, if any, that may be allowed to plaintiff as her dower interest in said lands, *etc.*

The cause was referred to a commissioner to ascertain the amount of said liens against the lands of said S. S. Jackson at the date of his deed to defendant, their nature and amount, which of said liens were created before the marriage of plaintiff to S. S. Jackson and which were created thereafter, what sum or sums had been paid upon said liens or either of them, to whom and by whom paid, and how and when the said payments were made, what lands said S. S. Jackson, deceased, was seised of as an estate of inheritance at any time during coverture with the plaintiff, Ona Blair, whether the title thereto was legal or equitable; showing the number of acres, location, and value thereof, and the nature of the evidence of his title thereto, the value of the rents, issues, and profits of the real estate mentioned in the bill and proceedings from the date of the death of S. S. Jackson until the commencement of this suit, the

value of the rents, issues, and profits of the real estate mentioned in the plaintiff's bill and proceedings from the commencement of the suit until the date of the report and the annual rental value of said real estate.

In response to these requirements, the commissioner, on the 25th day of April, 1894, reported that at the date of the deed from S. S. Jackson to the defendant, Moses Mounts, there were no liens existing against said lands; that during his coverture with the plaintiff the said S. S. Jackson was seised and possessed of the legal title in fee to a tract of one hundred and thirty eight and five tenths acres of land situated at the forks of Island creek in said county, and of the equitable title in fee to a tract of two hundred and six and five tenths acres adjoining said one hundred and thirty eight and five tenths acre-tract; that four hundred and fifty dollars would be a fair annual rental value of said lands; that there were numerous liens against said lands at the date of the title bond executed by S. S. Jackson to the defendant, Mounts, which are set forth and described in a statement filed with said report, all of which liens were valid and subsisting at the date of the marriage of the plaintiff to S. S. Jackson; and that the greater part of said liens were satisfied by the defendant, Mounts, he applying four thousand, one hundred and forty four dollars and twenty five cents of the purchase money thereto, and that said Mounts paid to said J. M. Jackson the sum of five hundred dollars for which he does not give said Mounts credit, as he was of opinion that the same in no wise constituted a lien upon the real estate in controversy.

The defendant, Moses Mounts, excepted to so much of said report as found that the amount paid to J. M. Jackson was not a charge against the lands in controversy in the hands of S. S. Jackson, and paramount to plaintiff's dower rights. Ona Blair also excepted to said commissioner's report: (1) Because said report is not responsive to the decree of reference, and fails to embrace matters necessary to be ascertained before a decree can be made in the cause, and no decree can be made upon said report which will dispose of the entire matter of controversy. (2) The said report shows the sum of four thousand, one

hundred and forty four dollars and twenty five cents as liens upon said land paramount to plaintiff's right of dower, when the evidence discloses that the sum of one thousand, two hundred and thirty dollars and thirty two cents, part of said sum, was an open account, and was never at any time a lien upon said land. (3) The evidence shows that at the date of the conveyance, to wit, February 3, 1889, all of the liens upon said land had been discharged, and said land was absolutely free from incumbrance. (4) The report fails to show the value of said land at the date of said conveyance. (5) The report fails to show the amounts of rents and profits of said land to which plaintiff would be entitled from the date of said conveyance to the making of said report.

Depositions were taken before the commissioner, and on the 1st day of September, 1894, the cause was heard, and the court, in its decree, overruled the exceptions to the commissioner's report taken by the defendant, and sustained the exceptions taken by the plaintiff to said report so far as the same ascertained any liens or incumbrances upon the lands mentioned in the plaintiff's bill and amended bill as being paramount to plaintiff's claim of dower, and decreed that the plaintiff was entitled, as tenant in dower, to the use of one-third of the real estate in the plaintiff's bills mentioned, notwithstanding her joinder in the deed for said lands to the defendant; and, the defendant in his answer electing to pay a sum in gross in lieu of dower in kind, as he has the right to do, and it appearing that the plaintiff was twenty one years of age at the time of the filing of her amended bill, the filing of which is taken as her first demand on the defendant for her dower in said lands, and it appearing to the court that the value of said lands at the time of the alienation thereof by her deceased husband was four thousand and five hundred dollars, and that the gross sum to which she was entitled was one thousand, one hundred and nine dollars and sixty one cents, decreed said amount to plaintiff, with interest and costs, in full satisfaction and discharge of her dower in said real estate; and from this decree said Moses Mounts appealed to this Court.

The first error assigned and relied upon is as to the action of the circuit court in overruling the demurrer to the plaintiff's original bill, but said demurrer is not insisted on in argument, and is presumed to have been waived. It is also claimed that the court erred in referring the case to a commissioner, but we can see no impropriety in the reference, as the matters required to be ascertained by the decree were necessary in order to bring out the facts with regard to the liens existing against the real estate of which S. S. Jackson, or any other to his use, was at any time during the coverture seised of an estate of inheritance, and when they were created with reference to his marriage with the plaintiff, the amount of said liens, and their character, *etc.*, such reference being the most convenient and proper method of bringing the matters before the court.

It is next claimd that it was error to overrule the exceptions of the defendant to the commissioner's report. Said commissioner finds and reports that at the date of the deed from S. S. Jackson to the defendant, Moses Mounts, there were no liens existing against said lands; that during his coverture with plaintiff said S. S. Jackson was seised and possessed of the legal title in fee to a tract of one hundred and thirty eight and five-tenths acres of land situated at the forks of Island creek, in Logan county, and of the equitable title in fee to a tract of two hundred and six and five-tenths acres adjoining the first named tract; that at the date of the title bond executed by said S. S. Jackson to the defendant, Mounts, there were a number of liens against said land; which were valid and subsisting liens at the date of the marriage of the plaintiff to S. S. Jackson; that the greater part of said liens were satisfied by the defendant, Mounts, he applying thereto four thousand, one hundred and forty four dollars and twenty five cents of the purchase money for said lands, and paying to J. M. Jackson five hundred dollars, which S. S. Jackson was to pay in satisfaction of a charge on the land for the support of said J. M. Jackson; and J. M. Jackson says in his deposition there was also a purchase-money lien of four hundred and thirty dollars due from S. S. Jackson to Samuel Jackson for the land on the north side of the creek,

which was paid by the defendant, Mounts, out of the purchase money. In order that we may properly determine the questions raised by the pleadings with reference to the plaintiff's claim to dower in these lands as the wife of S. S. Jackson, it is necessary that we should look to the facts, and notice first the condition of the lands in which the plaintiff is seeking to have her dower assigned with reference to liens and incumbrances at the date of her marriage with said S. S. Jackson on the 10th day of September, 1887. The title to the two hundred and twenty five acre-tract mentioned in the amended bill was then in Samuel Jackson, and, while S. S. Jackson had an equitable title thereto, it was incomplete, and subject to a lien of five hundred dollars, due to his father, J. M. Jackson. The one hundred and thirty eight acre-tract mentioned in the plaintiff's original bill, and his equitable interest in said two hundred and twenty five acre-tract, had been conveyed to J. B. Wilkinson, trustee, by deed of trust bearing date the 6th day of June, 1887, to secure to J. E. Robertson, J. A. Nighbert, and others debts which he owed them, amounting to the sum of two thousand, three hundred and fifty two dollars and fifty one cents, and it appears that other liens by judgments against said S. S. Jackson existed against said lands, which trust liens and judgment liens were created in June and July, 1887, and without interest, aggregated the sum of four thousand, four hundred and ninety nine dollars and seventy one cents. The plaintiff intermarried with said S. S. Jackson on the 10th day of September, 1887, and said S. S. Jackson died some time in the year 1889, subsequent to July. With these liens existing against said lands, the said S. S. Jackson contracted in writing, on the 17th day of March, 1888, to sell them with covenants of general warranty to the defendant, Moses Mounts, for the sum of four thousand five hundred dollars; two thousand dollars thereof to be paid by the 1st of May, 1888, one thousand two hundred and fifty dollars thereof to be paid on the 1st day of April, 1889, and one thousand two hundred and fifty dollars thereof to be paid on the 1st of April, 1890; the last two payments to bear interest at the rate of six *per cent.* from date until paid. It appears that

the lien against said lands amounted to four thousand, seven hundred and eleven dollars and six cents, which together with forty seven dollars costs, aggregated four thousand, seven hundred and fifty eight dollars and six cents, and that the defendant, Mounts, applied the purchase money he had contracted to pay for said land to the amount of four thousand, one hundred and forty four dollars and twenty five cents in extinguishment of said liens; that the commissioner refused to allow him credit for five hundred dollars paid by him to J. M. Jackson in satisfaction of the life estate reserved upon a portion of said land.

Now it is claimed by the plaintiff that by reason of the fact that these liens had been paid off by the defendant, Moses Mounts, previous to the conveyance made by S. S. Jackson and J. M. Jackson to said Mounts, she is entitled to dower in the lands mentioned in the original and amended bills. Can this contention be sustained? Does the fact that these liens were paid off and discharged by Moses Mounts with the purchase money he had contracted to pay for said land, under the circumstances of this case, give the plaintiff precedence over him, and a right to dower in the land which she did not possess previous to the payment of said liens? Or will equity, under the circumstances, subrogate the defendant, Mounts, to the rights of the parties who held said liens?

Sheldon, in his valuable work on Subrogation (on page 3, § 2) in speaking of subrogation, says: "It is a legal fiction, by force of which an obligation extinguished by a payment made by a third person is treated as still subsisting for the benefit of this third person, who is thus substituted to the rights, remedies, and securities of another. The party who is subrogated is regarded as entitled to the same rights, and, indeed, as constituting one and the same person, with the creditor whom he succeeds." And in section 3, under the head, "Who will be Subrogated," the same author says: "Subrogation, as a matter of right, independently of agreement, takes place for the benefit of insurers; of one who, being himself a creditor, has satisfied the lien of a prior creditor; of a purchaser who has extinguished an incumbrance upon the estate which he has pur-

chased"—citing *Armentrout's Ex'rs* v. *Gibbons*, 30 Gratt. 632, and *Corbally* v. *Hughes*, 59 Ga. 493. In speaking of the general doctrine of subrogation (in section 11) Sheldon says: "In short, the doctrine of subrogation is that one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other, and to indemnity from the fund out of which should have been made the payment which he has made." See *Allen* v. *Williams*, 33 N. J. Eq. 584, and *Darst* v. *Thomas*, 87 Ill. 222. "Although, as between debtor and creditor, the debt may be extinguished, yet, as between the person who has paid the debt and the other parties, the debt is kept alive, so far as may be necessary to preserve the securities." Again, in section 49, the same author says: "As the purchaser of an equity of redemption may be subrogated to the lien of prior incumbrances which he has paid in order to preserve his property, without having been under any personal obligation for their payment, so, *a fortiori*, if such a purchaser takes an assignment of a previous mortgage this will not operate as an extinguishment of the lien of the mortgage. And if the mortgagor's widow was entitled to dower or homestead as against such purchaser, but not as against the mortgagee, then, after such an assignment from the latter to the former, she can not have her dower or her homestead without redeeming from the mortgage, which, however, she will have the right to do." This question was before the court of appeals of Virginia in the case of *Wheatley's Heirs* v. *Calhoun*, 12 Leigh, 264, in which case the court held that "where C. & W. make a joint purchase of real estate, one of the terms of purchase being that, on receiving the conveyance of the property from the vendor purchasers shall mortgage same property to secure payment of the purchase money, vendor executes conveyance to C. & W., and they execute a mortgage of the property according to the agreement; C. dies, leaving unpaid three-fourths of the purchase money, with interest thereon, all of which W. pays except a trivial balance—that W. is entitled in equity to the rights of the mortgagee, and to have satisfaction out of the mortgaged subject for the excess of the

debt paid by him above his just proportion, namely a moiety thereof; and, as the rights of the mortgagee were paramount to the right of C.'s widow to dower, so are the rights of W., by subrogation, likewise paramount to her right of dower." Tucker, P., in delivering the opinion of the court, after stating that he thinks the deed of trust of Wheatley & Calhoun was paramount to the widow's dower, says: "Next, it is to be seen whether that deed of trust is yet in force. It would seem to be so in the strictest sense, for the whole purchase money has not yet been paid. But, even if it had been, I should be clearly of opinion that it was kept alive for the benefit of Wheatley, so far as he has made payments beyond his just proportion of the debt. Admitting (what I am not yet disposed to concede) that when a surety pays off a bond there is nothing to which he can be substituted, as the security is gone, yet the same inference can not be drawn in relation to a deed of trust. If the surety for the debt has paid it, still the title is outstanding in the trustee, and is in the power of a court of equity, which will apply it to his indemnification. The technical objection that the remedy is gone, and there is nothing to assign, can not prevail, and the court will act upon the conscience of the trustee, and compel him to execute the trust for the benefit of him who stands in the shoes of the creditor." See, also *Hawker* v. *Moore*, 40 W. Va. 49 (20 S. E. 848). Now, as to a case where the vendor's lien is retained, or the title withheld to secure the purchase money, Scribner on Dower (volume 1, p. 555, § 1) says: "We have seen that where a vendor of lands retains the title as security for the unpaid purchase money, the the superiority of this lien over the right of dower of the wife of vendee is clear and well established." As to judgment liens, the same author says (volume 1, p. 600, § 29): "Where a judgment lien is acquired against the husband's land prior to his marriage, and the land is sold subsequently thereto in satisfaction of the judgment debt, the right of dower of his wife in the land is defeated." In the case of *McNeil* v. *Miller*, 29 W. Va. 480 (2 S. E. 335) this Court held that: "The doctrine of subrogation, being the creation of courts of equity, is so administered as to secure essential

justice without regard to form, and is independent of any contractual relation between the parties to be affected by it." "It is not applied in favor of one who has officiously, and as a mere volunteer, paid the debt of another, for which neither he nor his property was answerable; but it will be applied whenever the person claiming its benefit has paid a debt for which another was primarily answerable, and which he was compelled to pay in order to protect his own rights or save his own property." See, also, *Hulings* v. *Lumber Co.*, 38 W. Va. 351 (18 S. E. 620) (third point of syllabus).

Looking, then, at the entire record in the light of these authorities, my conclusion is that the Circuit Court erred in holding that the plaintiff was entitled to dower in said tracts of land, or that she was entitled to a gross sum in lieu of her dower out of the purchase money paid by Moses Mounts for said lands; and the decree complained of must be reversed, and the bill dismissed with costs.