# CHARLESTON.

SOUTHERN BUILDING & LOAN ASS'N. *v.* PAGE *et al.*

(ENGLISH, JUDGE, *dissenting.*)

Submitted January 19, 1899—Decided April 8, 1899.

1. WARRANTY DEED—*Title Conveyed—Rights of Grantee—Title Bond.*

   A general warranty deed, without limitation, reservation, or exception conveys all the grantor's right, title and interest, both legal and equitable, in and to the property embraced therein, including the right of retention of the title to secure the unpaid purchase money due and owing from a prior recorded title-bond purchaser of an undivided interest in such property, and operates as a transfer of such unpaid purchase money to the grantee;. and after due recordation of such deed, and notice thereof, such title-bond purchaser cannot pay such unpaid purchase money to his vendor, the grantor in such absolute deed, except at his own risk and peril, but must pay the same to the grantee before he can demand conveyance of the retained legal title. *Turk* v. *Skiles*, 45 W. Va., 82. (p. 305.)

2. WARRANTY DEED—*Title Bond—Rights of Grantee—Fraud.*

   It is a fraud upon the grantee in such deed, after delivery and recordation thereof, for the grantor to receive payment of such unpaid purchase money; and such title-bond purchaser must take notice of the recorded condition of the legal title, and he cannot take advantage of such fraud without becoming a participant therein. (p. 306.)

3. DEED—*Equity of Redemption.*

   The subsequent deed of a grantor, who has by a prior deed conveyed the legal title in trust, can operate only to convey the equity of redemption until such prior deed is released. (p. 306 )

4. EQUITY—*Lien—Title.*

   If a person is induced to advance the money to pay off a trust lien on real estate on the assurance that the title to such property is otherwise clear, and take a new trust to secure the money so advanced, and it afterwards turns out that the. title to such real estate is incumbered by title bond, judgment lien, or otherwise a court of equity will keep the original trust alive as a security for the money so advanced. (p. 307.)

5. EQUITY—*Lein—Fraud.*

   In such case the person advancing the money is not a volunteer

or an intermeddler, but is the confiding dupe of the fraudulent representative of the borrower.  (p. 308.)

6.  LIEN—*Title-Bond—Rights of Purchaser.*

The subsequent incumbrancer or title-bond purchaser cannot take advantage of the fraudulent practices of the borrower, nor object to the restoration of the prior trust, as he is not injured thereby; but he is left in the same condition he was in prior to the attempted fraud, and this is all he is entitled to ask of a court of equity.  (p.  309.)

Appeal from Circuit Court, Cabell County.

Suit by the Southern Building & Loan Association against J. Harvey Page and others.  Decree for defendants, and plaintiff appeals.

*Reversed.*

SIMMS & ENSLOW, for appellant.

CAMPBELL, HOLT & CAMPBELL, for appellees.

DENT, PRESIDENT:

The Southern Building & Loan Association appeals from a decree of the circuit court of Cabell County, refusing to subject certain property of defendant W. C. Miller to payment of its lien.  Defendant J. Harvey Page, by deed dated the 11th day of March, 1892, conveyed the whole property in controversy, in trust, to secure the plaintiff a loan of five thousand dollars.  An undivided half of this property was claimed by Miller by virtue of a title bond placed on record some time prior to plaintiff's deed.  The following further statement of facts is taken from the brief of plaintiff's attorneys, to wit:

"Prior to March, 1899, J. Harvey Page and W. C. Miller were engaged in business in Huntington under the name of Page & Miller, and as such partnership had borrowed from the Ohio Valley Building & Loan Association the sum of $3,900.  Under contract made between said Page & Miller upon the 6th day of February, 1890, J. H. Page agreed, in consideration of his partner (W. C. Miller) paying off the amount of a lien given by Page upon the property in controversy to the Ohio Valley Building & Loan Association at $3,900, that then he (Page) would under certain conditions transfer an undivided one-half interest in the property on the Ohio river in the city of Huntington to

the said W. C. Miller. It appears from the testimony of Miller that Miller paid all the sums due the Ohio Valley Building & Loan Association, with the exception of $1,-541.26. Whether these dues were paid by the firm of Page & Miller out of the firm fund, or the exact amount of dues paid, is not certain; but on the day of settlement with the Ohio Valley Building & Loan Association of the partnership on the property, there was the sum of $1,541.26 due it. While the partnership of Page & Miller still existed, and while Page had the authority to sign the firm name, J. H. Page applied to the Southern Building & Loan Association for a loan upon certain stock standing in said association in the name of Page & Miller, on which stock different payments had been made by Page & Miller from time to time. When Page applied for this loan on the Page & Miller stock, he was told that, as he wanted to give his individual property as security, he had better have the stock transferred to his individual name, which was done by Page transferring the stock in the name of Page & Miller to himself, and having a new certificate issued in the name of J. H. Page. At the time this loan was made by the Southern Building & Loan Association, J. H. Page swore that the title to the property was in him, that it was not questioned, and that the only incumbrance on it was $1,500, which was the incumbrance of the Ohio Valley Building & Loan Association. At the time this statement was made the existence of the title bond made by Page & Miller, which was the foundation of Miller's claim, bearing date the 6th day of February, 1890, and recorded February 25, 1890, was unknown to the Southern Building & Loan Association or to its attorneys. Under this title bond and contract Miller had assumed to pay the entire amount due the Ohio Valley Building & Loan Association on the property, so as to clear the same of all incumbrances, in consideration of the sale to him of an undivided one-half interest. This contract provides that if the said Miller in any case should fail to pay the entire balance due the Ohio Valley Building & Loan Association, and have the trust deed released, then the said Page was to discharge the balance remaining, and cause the said deed of trust to be discharged and released, and should convey to the said Miller such proportion of the

undivided one-half interest as the book value of the 30 shares of stock by the said trust deed named at the time of Miller's failure bore to the face value of the said bond. The face of the bond was $3,900. The balance due at the time of Miller's failure to pay was $1,541.26, discharged out of the funds furnished by plaintiff."

Plaintiff claims it is entitled to enforce its lien against the whole of the property involved for two reasons: (1) Because defendant Miller, by l is conduct, is estopped from setting up his title bond; and (2) by virtue of subrogation to the released lien of the Ohio Building & Loan Association.

As to the first it is sufficient to say that Miller's title bond was on record, and there is nothing in this case showing that, prior to the loan made by the plaintiff, he did anything to mislead the plaintiff as to the title of the property. *Williamson* v. *Jones*, 43 W. Va. 562 (27 S. E. 411). In Bigelow, Estop. p. 294, it is said: "It is settled law that standing by in silence will not bar a man from asserting a title of record in the public registry or other like office so long as no act is done to mislead the other party. There is no duty to speak in such a case." In a note numerous cases are cited to support the text. It is hardly necessary to repeat them here, as the records of the proper office are the best notice of title, and, if they speak for a person, he is under no obligation to speak for himself. The facts and circumstances are not sufficient to justify relief on the grounds of estoppel.

Nor is it necessary to subrogate plaintiff to the released lien of the Ohio Building & Loan Association. Section 2, chapter 72, Code, referring to general warranty deeds, provides: "Every such deed, conveying lands, shall, unless an exception be made therein, be construed to include all the estate, right, title and interest, both at law and in equity, of the grantor in or to such lands." The deed of defendant Page to secure plaintiff was such a general warranty deed, and conveyed to the trustee, Martin, all the estate, right, title, and interest whatever, both in law and equity, of the grantor, Page, in and to the property. It conveyed, not only his undivided half, but also the undivided half of Miller, subject to the terms of the title bond;

thus fully investing the trustee with the legal title to Miller's half until Miller should comply with the conditions of his bond, which was to pay off the debt due the Ohio Building & Loan Association, at that time amounting to one thousand five hundred and forty-one dollars and twenty-six cents. In short, by his deed, Page substituted the plaintiff to all his reserved rights in the title bond to Miller. Plaintiff thereby became entitled to the provision that, if Miller failed to pay off any portion of the balance due the Ohio Building & Loan Association, he was only to have his fair share of the property, and also the covenant that Miller would pay off and discharge the association lien, with the right to compel him to do so. The payment of the lien out of the funds furnished by the plaintiff inured to the benefit of its trust deed. It matters not who is regarded as making the payment; for, if Page had made the payment out of his own funds, other than those furnished by the plaintiff, such payment would inure to the benefit of the plaintiff, for he had not only obligated himself to do so, but it is the settled law that where a person makes a general warranty deed for land, and afterwards acquires any manner of interest therein from others, it inures by estoppel to the benefit of his grantee. Bigelow, Estop. 384. The release, therefore, of the trust deed of the Ohio Valley Building Association inured to the benefit of the plaintiff, and not to Page, and he had neither the moral, legal nor equitable right to receive or demand from Miller the sum paid in discharge of such lien, but all his right thereto was vested in the plaintiff, and the legal title to the whole property was vested in the trustee for the plaintiff's benefit, subject, alone, to the title bond.

Nor had Miller any longer the right to pay Page the one thousand five hundred and forty-one dollars and twenty-six cents, and compel a conveyance of the property. Page had nothing left to him but a mere equity of redemption, and all that Miller took by Page's deed was such equity or redemption, which in no manner could effect the legal title vested for plaintiff's benefit and security. Page's deed adds nothing to Miller's title bond, and cannot do so until the legal title is released from plaintiff's lien. Miller now holds nothing in the property but a recorded equitable

interest, subject to plaintiff's prior equity and legal title. Plaintiff's equity is prior, because its funds were used to pay off the debt that Miller obligated himself to pay; and, as such debt was a lien prior in right to Miller's equity, plaintiff is entitled to the benefit of such priority, and before Miller can ask, he must do, equity.   Plaintiff's trust deed was placed on record immediately, and furnished Miller constructive notice as to where the legal title was, and in addition he had actual notice, as shown by the proof that plaintiff had furnished the money to pay his debt, and that Page had given a deed of trust on all his (Page's) interest in the property to secure plaintiff, at least prior to the time that he claims to have paid Page said sum of one thousand five hundred and forty-one dollars and twenty-six cents; and, having such notice, he could not pay such sum to Page, except at his own risk and loss, but it was his duty to pay it to plaintiff, holding the legal title.   Otherwise he could not demand from plaintiff the conveyance or release of the legal title.   The court, therefore, erred in holding that the plaintiff held title to only a one-half undivided interest in the property, but it should have held that the legal title to the whole property was vested in the trustee for plaintiff's benefit, subject to Miller's equitable right, under his title bond to pay to plaintiff said sum of one thousand five hundred and forty-two dollars and twenty-six cents, with interest from the 28th day of June, 1892, until paid, and thus obtain a release upon his one-half undivided half from the lien of plaintiff's trust, and on his failure to pay the same to subject such undivided half to the payment thereof.   "As long as the legal title to lands is retained, a lien for the purchase money exists." *Roush* v. *Miller*, 39 W. Va. 638. (20 S. E. 663); *Finley* v. *Armstrong*, 23 W. Va. 113; *Poe* v. *Paxton's Heir's* 26 W. Va. 607.

Miller's defense in this cause has been conducted on the theory that the legal title to this property was in Page, and passed by his deed.   This is certainly not the true state of the title, as heretofore shown.   What excuse, then, can Miller give for asking the court to devest the plaintiff of the title, and to invest it in him.   Under Page's deed he holds only the equity of redemption.   Under his title bond he must show payment of the purchase money before he

can ask a conveyance. He says: "I paid Page." The plaintiff answers: "When you did so, not only did you have constructive notice that Page had conveyed away his whole interest in the property, not only did you have facts and circumstances to put you on your guard, but you had actual notice that plaintiff's money had been used under a false pretense to pay your debt, to secure which he had undertaken to convey, not only his, but your, interest in the property." While Miller states in his deposition that he did not know at the time it was done that Page intended to convey away his interest in the property, neither in his deposition nor his pleading does he deny that at the time he paid Page the one thousand five hundred and forty-two dollars and twenty-six cents he had full and complete notice and acknowledge of plaintiff's trust deed. This is a matter that devolved upon him to show to justify such payment and relieve him from imputation of an after attempt to secure the benefit of Page's fraud, and thereby become a participant therein.

While the plaintiff has the right, legal and equitable, to retain the legal title until the purchase money is fully paid, if such were not the law, it would undoubtedly be entitled to subrogation to the lien of the original deed of trust of the Ohio Valley Building Association to the extent of such purchase money. This is owing to the fraud practiced on it by Page. It was induced to furnish this money on the false representation by Page that he was the owner of the property, and that it was free from all other incumbrances. His statement in this regard was sworn to by him, and was made as an inducement to get the loan. In the case of *Sidener* v. *Pavey*, 77 Ind. 241, it is held that under such circumstances the subsequent mortgagee is neither a meddler nor a volunteer, nor his payment voluntary, who furnishes money to pay off a prior deed of trust or mortgage, on the representation that the property is otherwise free from incumbrance, and that against all such other incumbrances he is entitled to be substituted to the lien of the incumbrance his money was used in satisfying.

It is also held that "if a formal discharge of a mortgage has been obtained by fraudulent means, it is no payment and discharge of the mortgage, and a subsequent lien hold-

er, whose rights existed at the time of such discharge, cannot object to the prior mortgagee being restored to his rights." And in such cases of fraud and mistake a third person who pays the mortgage at the request of the debtor, and takes a new mortgage for the same debt, will be subrogated to the rights of the original mortgage as against intervening incumbrances existing at the time of the cancellation of the first mortgage. Jones, Mortg. sections 2, 876-878; *Hyde* v. *Tanner*, 1 Barb. 75; Mosier's Appeal, 56 Pa. St. 76; *McCormick's Adm'r* v. *Irwin*, 35 Pa. St. 111; *Payne* v. *Hathaway*, 3 Vt. 212; *Snelling* v. *McIntyre*, 6 Abb. N. C. 469; *Green* v. *Milbank*, 3. Abb. N. C. 138; *Gerwig* v. *Sitterly*, 56 N. Y. 214; *Paterson* v. *Birdsall*, 64 N. Y. 294; *Cole* v. *Malcolm*, 66 N. Y. 363; *Barnes* v. *Camack*, 1 Barb. 393; *Carter* v. *Taylor*, 3 Head, 30; *Matterson* v. *Thomas*, 41 Ill. 110; *Barnes* v. *Mott*, 64 N. Y. 397; *Haggerty* v. *McCanna*, 25 N. J. Eq. 48; 21 Am. & Eng. Enc. Law 294.

Many other authorities might be cited in favor of this well-settled doctrine, but it is unnecessary to do so in this case; for, as heretofore held, the plaintiff's trustee holds the legal title to the property for plaintiff's benefit until Miller pays off the vendor's lien existing against the same at the time Page conveyed away his whole interest in the property, both legal and equitable, to such trustee. The decree is therefore reversd, and a decree entered in favor of plaintiff against Miller's half of said property for the sum of one thousand five hundred and forty-two dollars and twenty-six cents, with interest from the 28th day of June, 1892, until paid, and this cause is remanded for further proceedings.

ENGLISH, JUDGE, (*dissenting*).

J. Harvey Page was the owner of a tract of land in the city of Huntington, and on the 28th day of January, 1890, he executed a deed of trust upon said property to secure the payment of a bond executed by himself and W. C. Miller, of that date, for the sum of three thousand nine hundred dollars, payable to the order of the Ohio Valley Building & Loan Association. On February 6, 1890, said Page executed a title bond to Miller for an individual one-half of said land, and the consideration was that Miller should

pay off the said bond to the Ohio Valley Building & Loan
Association, and secure the release of said deed of trust,
which title bond was acknowledged February 10,1890, and
admitted to record on the 25th of the same month. Miller
made payments to the Ohio Valley Building & Loan Asso-
ciation, until the 11th of March, 1892, when he had re-
duced the debt to one thousand five hundred and forty-one
dollars and twenty-six cents, when said Page borrowed
money from the Southern Building & Loan Association;
and said Miller subsequently paid said Page the amount
so advanced, by paying his dues to the Southern Building
& Loan Association and allowing him to receive the whole
of the rents arising from said property until said debt of
one thousand five hundred and forty-one dollars and twen-
ty-six cents had been reduced to five hundred and ten dol-
lars, for which amount Miller executed his note to Page,
dated June 7, 1892, which note was afterwards paid by Mil-
ler. On January 18, 1893, Page and wife conveyed the un-
divided half of said property described in the title bond to
Miller, and the deed was recorded January 21, 1893. On the
29th of August, 1891, said Page borrowed from the South-
ern Building & Loan Association five thousand dollars, to
secure which said Page and his wife, Annie Page, executed
a note, bearing date the 11th of March, 1892, by which they
promised to pay, six years after date, to the order of the
Southern Building & Loan Association the sum of five
thousand dollars, subject to the stipulation that, in the
event that Page made default in the interest, premiums, or
fines of said association for the period of six months, then
the said bond should become due and payable; and the said
Page and wife executed a deed of trust, dated March 11,
1892, conveying with covenants of general warranty said
tract in the city of Huntington to secure the payment of
said note. When this note fell due, Page made default in
its payment, and on October 16, 1896, said Southern Build-
ing & Loan Association brought a suit in equity in the cir-
cuit court of Cabell county, setting forth these facts, and
praying that its deed of trust upon the said tract of land
might be decreed the first lien upon the entire tract, and
that it might be sold to pay the amount due it, with inter-
est and costs; that the said title bond, dated February 6,

1890, and the deed from Page and wife to W. C. Miller, be set aside as clouds upon the title, and the same be held as void to plaintiff's claim; and that said Miller be estopped from asserting any other claim against said property, so far as affects plaintiff's lien. The grounds upon which the plaintiff predicated its claim for the relief prayed for in this case are thus briefly stated: At the time said deed of trust was executed by Page and wife, with covenants of general warranty, the said Page had, unknown to plaintiff, made a written contract with Miller by which he agreed to convey to him an undivided half interest in said property in consideration of Miller's paying off the amount due the Ohio Valley Building & Loan Association on its lien, and that, although said contract was then recorded, at the time the loan was made by plaintiff to Page its existence was unknown to it; that said title bond was without consideration; that said Miller never complied with the conditions of the bond, and was not entitled to a deed; that under said title bond Miller was to pay off the lien of the Ohio Valley Building & Loan Association upon the property in question, but that he did not comply with this requirement, and the same was discharged by plaintiff, and it was therefore entitled to be subrogated to the rights of the Ohio Valley Building & Loan Association to the extent of the lien so paid; that Miller knew that Page was obtaining said loan from plaintiff for the purpose of paying off the deed of trust, for which said Miller, as a joint maker, was responsible to said Ohio Valley Building & Loan Association; that the understanding between Page and Miller at the time was to release the said title bond, and Page was to hold the entire tract set out in the deed of trust, although the fact of Miller's holding said title bond was not known to plaintiff at the time the loan was made; that Page obtained the loan from plaintiff with the consent of Miller, and by his procurement executed the deed of trust to secure same, and for that reason Miller was estopped from setting up any claim to the property as against plaintiff; and that the deed from Page and wife to Miller was also without consideration, and made for the purpose of hindering, delaying, and defrauding the creditors of said Page. Miller filed his answer to the bill, putting in issue the ma-

terial allegations thereof, and setting up his purchase of the undivided half of said property in good faith under said title, and the time and manner of his payment for the same. The cause was referred to a commissioner, depositions were taken, and the commissioner reported adversely to the claims asserted by plaintiff in its bill. Commissioner's report was excepted to by plaintiff, the exceptions overruled, and a decree entered directing the sale only of the half of said property belonging to Page in satisfaction of the plaintiff's debt. From this decree the plaintiff obtained · this appeal.

The first point relied on and assigned as error by the appellant is as to the action of the court in overruling the exceptions of plaintiff to the commissioner's report, because he reported the entire tract, the legal title to which was in J. H. Page at the time of obtaining the loan, was not liable to sale for the payment of the lien of the appellant. Now, while it is true that at the time Page obtained the loan from the appellant he was the holder of the legal title to the property on which the deed of trust was executed to secure the loan, yet Miller at that time not only held a title bond for the undivided half of the property, but the same was then on record, and appellant was bound to take notice of it. The consideration stated on the face of the title bond was to pay off and discharge, according to its terms, a certain bond executed by said Page & Miller on the 28th of January, 1890, for the sum of three thousand nine hundred dollars, payable to the order of the Ohio Valley Building & Loan Association, and to obtain the release of the deed of trust then executed to secure the payment of said bond: and said title bond covenanted that, upon the payment of the bond and the release of said trust, Page and wife would at once convey one undividual half interest in the property to Miller, who proceeded to comply with said conditions by paying the dues to said building and loan association until he reduced the debt from three thousand nine hundred dollars to one thousand five hundred and forty-one dollars and twenty-six cents. Page then paid the balance himself with money borrowed from the Southern Building & Loan Association; Miller subsequently repaying him and obtaining a deed from Page and wife for said un-

divided half.  Our statute (section 4, chapter 74, of the Code) provides that: "Any contract in writing made in respect to real estate or goods and chattels, in consideration of marriage, or made for the conveyance or sale of real estate, or a term therein for more than five years, shall from the time it is duly admitted to record be as against creditors and purchasers as valid as if the contract was a deed conveying the estate or interest embraced in the contract."  The appellant had all the notice it was entitled to as to this title bond.  It is true that Page, in executing the deed of trust to secure the loan, described therein the entire property, instead of the undivided half, and conveyed the same to the trustee with covenants of general warranty.  This deed, however, only operated to convey the title held by him, to wit, the undivided half, and by his warranty he subjected himself to a claim for damages by reason of the defect in his title.

The first exception to the commissioner's report claims that said report is erroneous, so far as it fails to report that the payment of one thousand five hunded and forty-one dollars due on the lien of the Ohio Valley Building & Loan Association upon the property set out in the bill, which Miller bound himself to pay, does not entitle the association to the benefit of a lien upon the whole property to that extent.  The second assignment of error is the same in substance as the first, and the third claims that the court should have held that the appellant should have been substituted to all the rights of the Ohio Valley Building & Loan Association, and to charge the land belonging to Miller with the payment of the lien which it realized, and which inured to the benefit of said Miller.  This right of subrogation is predicated upon the allegation that the appellant paid off the balance due the Ohio Valley Building & Loan Association which Miller had bound himself to pay, but the evidence does not support this contention.  On the contrary, it clearly shows that it was paid by Page out of the borrowed money; and that that was the understanding at the time the loan was applied for appears on the face of the application, which is in evidence.  Question 25, propounded to said applicant, was: "Are there any existing incumbrances on said property?  A.  Yes.  Q.  If so, state

same. A. $1,500. Q. 26. Will release of above incumbrances be procured by you, ready for delivery and for record at the time of closing the loan? A. Yes; will pay out of proceeds of loan." On March 30, 1892, it appears from Exhibit 5, filed with the deposition of F. B. Enslow, said Page gave to Simms & Enslow, attorneys at law, the following order: "You are hereby authorized to pay the Ohio Valley B. & L. Association, out of the money due me from the Southern B. & L. Association, what I owe the said Ohio Valley Association and when draft for said amount reaches you, you are authorized to hold same till it is paid. (Signed) J. H. Page." In pursuance of this order, on June 28, 1892, Simms & Enslow drew their check in favor of the Ohio Valley Building & Loan Association for one thousand five hundred and forty-one dollars and twenty-six cents. F. B. Enslow, in reference to this check, says in his deposition: "At the time this check was drawn in this way, our firm had refused to turn over the money until the liens were paid off,"—and on March 30, 1892, Page directed and authorized the firm of Simms and Enslow to pay the Ohio Valley Building & Loan Association, out of the money due him from the Southern Building & Loan Association, the amount he owed said association; and he files said check and direction from Page to pay said money over with his deposition. Thus it appears that Page paid the balance due the Ohio Valley Building & Loan Association out of money he had borrowed from the Southern Building & Loan Association.

Under this statement of facts which appears from the record, the Southern Building & Loan Association was not entitled to subrogation, for the reason that it did not pay off the lien held by the Ohio Valley Building & Loan Association; but, on the contrary, the proof shows the same was paid by Page with money borrowed from the appellant. Sheldon, in his work on Subrogation (page 15, section 11), says: "In short, the doctrine of subrogation is that one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other, and to indemnity from the fund out of which should have been made the payment which he has made,"—citing *Allen* v.

*Williams*, 33 N. J. Eq. 584; *Durst* v. *Thomas*, 87 Ill., 222. The same author (page 3, section 2) says: "It is a legal fiction, by force of which an obligation extinguished by a payment made by a third person is treated as still subsisting for the benefit of this third person, who is thus substituted to the rights, remedies, and securities of another." And again, in section 240: "The doctrine of subrogation is not applied for the mere stranger or volunteer, who has paid the debt of another without any assignment or agreement for subrogation, being under no legal obligation to make the payment, and not being compelled to do so for the preservation of any rights or property of his own." And in section 241: "Subrogation by operation of law exists in favor, not of all who pay the debt of another, but only in favor of those who, being bound for it, have therefore discharged it." In substance the same is held in *Insurance Co.* v. *Middleport*, 124 U. S. 534 (Syl., point 3), 8 Sup. Ct. 625, which reads: "The doctrine of subrogation in equity requires (1) that the person seeking its benefit must have paid a debt due to a third party before he can be substituted to that party's rights; (2) that in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in case of sureties, prior mortgages," etc. The right is never accorded in equity to one who is a mere volunteer in paying a debt of one person to another. To same effect see *Blair* v. *Mounts*, 41 W. Va. 706. (24 S. E. 620;) *Shinn* v. *Budd*, 14 N. J. Eq. 234. The case at bar lacks the essential element to entitle the Southern Building & Loan Association to subrogation which is found in all the cases above cited, to wit, that the party claiming the right to be subrogated pay the debt either as a volunteer or by compulsion. The proof clearly shows that the debt due the Ohio Valley Building & Loan Association was paid by Page, and this fact deprives the appellant of any right of subrogation.

It is contended by counsel for appellant that Miller had full knowledge of the fact that Page was obtaining the loan, and that he expected to give a deed of trust on the entire property; but Miller swears in his deposition: "I was aware he intended or was trying to get a loan, but did not

know he was trying to mortgage my property to get it." Counsel for the appellant, however, further contend that Miller, with full knowledge of the facts, did not make known to plaintiff that he had any written contract or agreement or right in said property, and did not make any claim, at the time the lien was made, that he had any interest in the same, and that, having failed to speak when equity and good conscience required him to assert his rights, it is too late now to come and set up what he should have done during the time the negotiations were in progress. This contention, however, is met by the fact that Miller has spoken by placing his title bond on record, and giving notice to the world of his contract; and if the appellant, in abstracting the title, overlooked it, it cannot ascribe the blame to Miller. In the case of *McClaskey v. O'Brien*, 16 W. Va. 792 (Syl., point 7), this Court held "that marshaling should not be enforced to the prejudice of a third party. As subrogation is an equity, it will not be enforced when the effect will be to prejudice or impair the right of third persons; it being well settled that, where parties have an equal claim to the consideration of a chancellor, the law will be suffered to take its course." See, also, opinion of HAYMOND, J., at page 842, and authorities cited. Now, it is well known to persons dealing with building and loan associations that when they loan money they require a first lien on the property, and Page, in negotiating with the appellant for this loan, became aware of this fact, as is apparent from his language to Simms & Enslow in his order of March 30, 1892: You are hereby authorized to pay the Ohio Valley B. & L. Association out of the money due me from the Southern B. & L. Association; * * * and when draft for said amount reaches you, are authorized to hold the same until it is paid." It is thus that this loan negotiated by Page from appellant was to pass through the hands of Simms & Enslow, and they were to lift this lien of the Ohio Valley Building & Loan Association, and pay Page the balance, which they did, as shown by check of Simms & Enslow; but the evidence shows they paid it out of money borrowed by Page from the appellant.

Attention is called to the fact that at the time Page borrowed the sum of five thousand dollars from the South-

ern Building & Loan Association he held one hundred
shares of stock in said association, and that the three ap-
praisers appointed to fix the value of the property upon
which Page proposed to give the trust to secure the five
thousand dollars loan fixed same at fourteen thousand five
hundred dollars, the half of which would be seven thous-
and two hundred and fifty dollars. The association ex-
amined the title, and took the security they regarded as
satisfactory. Application was made for this loan August
29, 1891, and on March 30, 1892, he received the money,
and paid off the Ohio Valley Building & Loan Association,
and this suit was not brought until October, 1896. In the
meantime Miller, under his title bond, had repaid Page and
obtained his deed. As to the effect of the general warranty
contained in the deed of trust, it is clear that Page could
not, by such warranty, abrogate his contract with Miller,
which appeared on the face of the recorded title bond, and
which said association had notice of when it loaned the
money and took the trust. The trustee in that deed of trust
could acquire no better or other title than Page had, and,
if Miller paid what was due the Ohio Valley Building &
Loan Association, he was, under his contract, entitled to
his deed,—it being expressly provided on the face of the
title bond that if said Miller should, by death or for any
other reason, become unable and fail to pay the entire bal-
ance of said bond, and have said trust deed released, then
Page was to discharge the balance, obtain a release of the
trust deed, and convey to Miller such proportion of the
undivided one-half interest in said land as the book value
of thirty shares named in said trust deed at the time of Mil-
ler's failure bears to the face value of said bond; but Mil-
ler had not failed for any reason to comply with his con-
tract, but was proceeding to pay off the trust, and had re-
duced the debt from three thousand nine hundred dollars
to one thousand five hundred and forty-one dollars and
twenty-six cents, and Page, as a mere volunteer, could not
pay the balance, and be subrogated to the rights of Miller.
No contract, fair or fraudulent, between Page and said
association, could deprive him of the benefit of his contract.
If Page paid the association before it was due, that fact
did not deprive Miller of the right of repaying him and

claiming his deed, which he did. The Southern Building & Loan Association had notice of the lien of the Ohio Valley Building & Loan Association, and it was expressly agreed and understood between that company and Page, at the time the loan was made. that he was to pay off that lien out of the money loaned him, which he did, and cleared the Page property of everything except Miller's title bond, which it was bound to take notice of; and now said association claims that, although Page has taken the money borrowed from it and paid off that lien, yet it is entitled to come in and be substituted to that lien. In other words, they say, "It is true you paid it off out of the money loaned you, still we are entitled to step into the shoes of the Ohio Valley Building & Loan Association;" that is, it would be still entitled to its trust lien to secure said five thousand dollars and also to the Ohio Valley Building & Loan Asciation's lien on the property after it was paid off by Page. I am of the opinion, therefore, that the appellant was not, by such payment, entitled to be subrogated to the rights of the Ohio Valley Building & Loan Association; and my conclusion is that there is nothing apparent in the record that shows the defendant Miller was guilty of any such fraud or concealment as would vitiate his title to the undivided half of said property and that there is no error in the decree complained of. I would therefore affirm the decree.

<em>Reversed.</em>