SIMON MEYERS v. JAMES D. MARKHAM.[1]

July 10, 1903.

Nos. 13,506—(173).

**Vendor and Purchaser.**

Contract for the sale of real property construed, and cause remanded to the court below, with directions to modify its conclusions of law, and award the relief referred to in the opinion.

**McNamara v. Pengilly Distinguished.**

McNamara v. Pengilly, 64 Minn. 543, to the effect that a vendee in a contract for the sale of land is not bound to accept a deed from any person other than his vendor, distinguished, and the rule there laid down *held* not to apply to a contract for a quitclaim deed.

On Reargument, October 23, 1903.

**Conveyance by Vendor—Election of Remedies.**

Where the vendor in a contract for the sale of land subsequently conveys the land to a third party, the contract vendee has the election of two remedies: (1) To acquiesce in the conveyance, and seek a performance of the contract by a third party; or (2) treat the conveyance as a breach of the contract, and resort to an action against the vendor for damages.

**Cloud on Title.**

In this case it is *held* that, by defendant's refusal to carry out the contract with the third party, he is conclusively presumed to have elected to pursue his remedy against his vendor; and plaintiff, vendee in the subsequent conveyance, is entitled to have the record of the contract removed, as a cloud upon his title.

Appeal by plaintiff from a judgment of the district court for Pine county, entered pursuant to the findings and order of Crosby, J. Reversed, and judgment ordered for plaintiff.

*Wm. H. Donahue,* for appellant.

*P. H. Stolberg, S. G. L. Roberts,* and *J. D. Markham,* for respondent.

BROWN, J.

Action to cancel certain contracts for the sale of six hundred eighty acres of land in Pine county, and to remove the record thereof, as

[1]Reported in 96 N. W. 335, 787.

clouds upon plaintiff's title. Defendant had a judgment in the court below, and plaintiff appealed therefrom.

The short facts are as follows: In July, 1895, one Ogren was the owner of the land in controversy, or of some interest therein, and entered into an agreement with the firm of Kelsey & Markham, whereby, for the consideration of $300, he agreed to deliver to that firm deeds from all persons having claims against the property, with certain exceptions, and convey to them all his title to the property. The contract was subsequently assigned to defendant in this action, who caused the same to be recorded in the office of the register of deeds. Thereafter, on May 3, 1900, defendant and Ogren entered into another agreement, to supersede and take the place of the one just referred to, which recites the fact that both parties have certain interests in and to the real estate in question, which is therein described, and that there are certain defects in the record title to the same, which they desire to have remedied; that Ogren was anxious to sell and transfer his interest in the premises to defendant, and the latter agreed to purchase the same, and pay him therefor the sum of $350, Ogren to execute and deliver to defendant a quitclaim deed of all his right, title, and interest therein. The contract further provides that defendant will, "with all convenient speed," commence and prosecute to final judgment an action for the purpose of quieting title to the premises, and pay or cause to be paid all the necessary costs and expenses incident to the prosecution of the same. It provides, also, that Ogren shall· during the pendency of the action aid and assist defendant in its prosecution, attend the trial as a witness, and turn over to defendant all deeds which he then had in his possession, or which might thereafter come into his possession, relating to the title to the land, and furnish the services of an attorney to aid defendant in the prosecution of said action. Subsequent to entering into this contract, on November 23, 1900, Ogren duly executed and delivered to plaintiff a quitclaim deed of the premises, thereby transferring to him all Ogren's title thereto. Defendant was informed of this transfer some time after it was made.

The trial court, found, in addition to what we have stated generally as the facts. that neither party ever performed, or offered to perform, the contract last referred to. The court further found that, about a month after defendant learned of the quitclaim deed from Ogren

to plaintiff, he tendered to Ogren the sum of $350 in payment for the land—the same being the amount fixed by the contract—and demanded a deed from him, which was not given; Ogren having previously conveyed to plaintiff. The court also found that, notwithstanding notice of the conveyance to plaintiff, defendant refused to recognize him as having any rights in the premises, and refused to deal with him concerning the property in any manner whatever. The question presented. for decision is whether plaintiff is entitled to any relief. With the unimportant question relative to the commencement of the action to quiet title to the land referred to in the contract out of the way, we think the rights of the parties are reasonably free from doubt.

Plaintiff acquired title to the premises with notice of the contract between Ogren and defendant, which was made to supersede and take the place of the prior contract made between Kelsey & Markham and Ogren, subject to all the rights thereby conferred upon defendant, and was bound to perform the terms of the. same as fully as Ogren would have been required to do, had he retained the title.

We need not stop to consider whether Ogren could assign the contract. Its execution did not disable him from selling and transferring his title to the land to another. Such sale and transfer would be, however, as just stated, subject to whatever rights the contract created in defendant. The trial court having found that neither party performed the terms of the contract, it is important to inquire whose duty it was to act first—which party was required to take the initiative step toward a performance or carrying out of the contract. It is urged by respondent that Ogren was to act first; that he was, by the terms of the writing, to furnish an attorney to prosecute the action to be brought by defendant to quiet title to the land; and that he failed to do so. We are unable to concur in this construction of the contract. It required defendant to commence the action "with all convenient speed." Ogren was to furnish an attorney to assist in its prosecution, but the terms of the agreement do not justify the contention that he was to provide an attorney to commence it. Fairly construed, the contract required Ogren only to furnish the services of an attorney to aid in the conduct of the suit after it had been brought, and he was not required to move in that direction until informed of the commencement of the action by defendant. So it appears that defendant was first in default,

if default in the terms of the agreement for the commencement of the action may be said to be of any importance whatever, for he never commenced it.

But this provision of the contract does not seem to us of controlling force in determining the issues of the case. Defendant was the purchaser of the land, and it was to his interest alone that the title to the same be perfect. The action agreed to be brought to quiet title would in no way result beneficially to Ogren. It was not to be brought, except in part performance of the contract, and was of interest only to defendant. Ogren was to receive $350 for his interest in the land, and that, too, whether the action to quiet title was successful or not. It must therefore be held that the terms of the contract in this respect, being exclusively for defendant's benefit, could be waived by him. If he desired to bring the action as provided by the terms of the agreement, it was his option so to elect. He did not commence it, but, on the contrary, without doing so, tendered payment of the purchase price of the land to Ogren, and demanded the quitclaim deed he had by the terms of the contract agreed to execute. The reasonable and fair inference from this is that he intended to waive the provisions of the contract in this respect. Unless this be so, it is within his power to retain his contract, cloud the title by its record, and no relief whatever can be granted plaintiff. This would be inequitable and unjust, and prevent plaintiff from the enjoyment of his legal rights.

On the merits, we are impressed with the view that there is very little for controversy between the parties, and that the litigation, for the benefit of both, should be brought to an end. The conceded facts in the record are such as to justify the suggestion that no further litigation is necessary. Plaintiff is the owner of the land at this time, but his title is subject to defendant's rights under the agreement with Ogren. Having waived the provisions in reference to the commencement of the action to quiet title, defendant may still insist that plaintiff deliver to him all deeds and instruments of title possessed by Ogren, and, by paying the contract price of the land to plaintiff, demand a quitclaim deed from him. The point made that defendant is not bound to accept such a deed from plaintiff, because and for the reason that his contract calls for one from Ogren, is not sound. The agree-

ment provided for a quitclaim deed from Ogren, and, as Ogren conveyed to plaintiff, by quitclaim deed, whatever title he held, a similar deed from plaintiff would be just as effective as, and answer every purpose of, a deed from Ogren. The case of McNamara v. Pengilly, 64 Minn. 543, 67 N. W. 661, is not in point, because in that case the effect of the contract was to require the execution of a deed containing the usual covenants.

Plaintiff should be required, upon payment of the purchase price, to convey to defendant such title to the premises as he obtained from Ogren, and cause to be conveyed to defendant any title subsequently acquired by Ogren, and also deliver to him, or to the clerk of the court for his use, all deeds, certificates, and evidence of title affecting the property possessed by Ogren, which the terms of the agreement required the latter to deliver to defendant. A reasonable time should be allowed both parties to comply with the conditions. If defendant does not tender payment of the purchase price within the time fixed by the court below, plaintiff should have judgment as prayed for.

The judgment appealed from is reversed, and the cause remanded, with directions to the court below to amend its conclusions of law, and order judgment in accordance with the views herein expressed. It is so ordered.

On July 23, 1903, the following order was filed:

PER CURIAM.

An application for a reargument herein having been duly made and considered, it is ordered that it be, and is hereby, granted upon the question whether, by reason of the fact that the plaintiff gave the defendant notice to perform the contract, referred to in the complaint, as provided by Laws 1897, p. 431 (c. 223), and the defendant's failure so to do, the plaintiff is not entitled to judgment cancelling the contract, and excluding the defendant from any interest in the land therein described, subject to whatever rights the defendant may have, if any, against any party, for damages for a breach of the contract; the argument to be on briefs; the appellant to serve and file his within thirty days from this date, and the respondent within thirty days thereafter.

The cause having been submitted on reargument, the following opinion was filed October 23, 1903:

BROWN, J.

We were impressed by the oral argument on the former presentation of this cause that there was very little for controversy between the parties to the litigation. We understood from what was said on the argument by counsel for plaintiff that the latter was willing to accept the purchase price of the land and carry out the terms of the contract, but defendant had refused to deal with him in the transaction; and on that theory the former opinion was written.

On the reargument our attention is more clearly called to the real point in the case, namely, that, though plaintiff was, at the time the land was conveyed to him by Ogren, willing to carry out and perform the contract between Ogren and defendant, and to accept the purchase price there agreed by defendant to be paid, defendant has at all times persistently refused to recognize him in the transaction, or to perform or carry out the terms of the contract with him. To bring the matter to an end, the plaintiff gave notice to defendant, some time after the conveyance by Ogren to him, of a cancellation of the contract for his (defendant's) failure to comply therewith, giving him thirty days' notice of such cancellation. Notwithstanding such notice, defendant refused to perform the contract or to recognize plaintiff as having any rights in the premises, and it is insisted that by his refusal defendant waived all right to pursue the land under the contract, or to have a specific performance thereof. We are urged to reconsider the case in this new light. Assuming, as we did, the willingness of plaintiff specifically to perform the contract, we did not give this feature of the case on the former hearing the consideration to which it was entitled.

The fact that the owner of land has entered into a contract for the sale of the same does not disable him from subsequently conveying and transferring the land to a third party, as was done in this case. The effect of such a transfer would be a breach of the contract, and would give the contract vendee the option of two remedies: (1) Acquiescence in the transfer, which in this case would have resulted in substituting Meyers for Ogren; or (2) treat the conveyance to the

third person as a breach of the contract, and resort to an action for damages for such breach.

In the case at bar the trial court found that, after Ogren had conveyed the land to Meyers, defendant refused to recognize the latter as having any interest in the land, or any right to insist on the performance of the contract, and he at all times refused to carry out the contract or perform any of its provisions. He must, from this, be deemed to have elected to repudiate the conveyance to Meyers, and to resort to his remedy against Ogren as for a breach of the contract. Meyers having given defendant notice of the cancellation, it was his duty to act promptly, and either treat with Meyers as the real party in interest, and perform the contract, or rely wholly upon his action against Ogren; and, not having proceeded under the contract, he can no longer pursue his remedy against the land. He must be taken to have abandoned all rights or claims to a specific performance of the contract as against Meyers. It follows that plaintiff is entitled to have the record of the contract between Ogren and Markham cancelled of record as a cloud on his title, and defendant limited to his action against Ogren for a breach of the contract. This is not a cancellation of the contract itself, but only removes it from the record as a cloud upon plaintiff's title, and whatever rights defendant may have as against Ogren for a breach of the contract are in no way affected. The notice of cancellation given by plaintiff to defendant was sufficient to require defendant to act, and in view of the fact that he has at all times refused to recognize plaintiff in the transaction, though having full notice of the conveyance to him, the written notice is sufficient to bring their relations to an end. Perhaps no written notice at all was necessary, under the circumstances.

It is therefore ordered that the judgment appealed from be reversed, with directions to the court below to order judgment for plaintiff, removing the contracts in question from record as clouds upon plaintiff's title, and excluding defendant from any right or interest in the land by reason of such contracts.