# WESTERN LAND SECURITIES COMPANY v. DANIELS-JONES COMPANY.[1]

January 27, 1911.

Nos. 16,878—(210).

**Breach of contract — evidence.**

In an action to recover damages for the breach of an executory contract for the sale of land, it is *held* that the evidence is sufficient to sustain the verdict of the jury to the effect that defendant unconditionally repudiated the contract, and refused to perform the same, and that the damages awarded are not excessive.

**Incompetent evidence.**

Incompetent evidence, if material, is sufficient to establish a fact in issue, when received without objection.

**Charge to jury.**

There were no errors in the instructions to the jury.

Action in the district court for Ramsey county to recover $16,000, damages for breach of a contract for the sale of a section of land in North Dakota made by defendant's assignor to plaintiff's assignor. The facts are stated in the second paragraph of the opinion. The answer alleged that the contract was terminated, pursuant to the statutes of North Dakota, prior to the commencement of the action and plaintiff had knowledge of the termination proceedings prior to the taking of the assignment, but tendered performance to plaintiff, if it was legally entitled to such performance. The case was tried before Hallam, J., and a jury which returned a verdict in favor of plaintiff for $3,272.19. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Jesse Van Valkenburg* and *George S. Grimes,* for appellant.

*B. H. Schriber,* for respondent.

[1] Reported in 129 N. W. 508.

BROWN, J.

Action to recover damages for the alleged breach of an executory contract for the sale of land. Plaintiff had a verdict, and defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or a new trial.

It appears that Daniels and Jones were the owners of the land involved in the action, and some time prior to April 3, 1908, they entered into an executory contract for the sale thereof, with other lands, to Stark and McLane. On April 3 Stark and McLane entered into an executory contract for the sale of the particular land here in question to Cass. Subsequently Stark and McLane formed a corporation, known as the Stark & McLane Land Corporation, and the executory contract just mentioned was by Stark and McLane assigned and transferred to the corporation. The land corporation was unable to carry out the executory contract with Daniels and Jones, and it was released therefrom. As a part of the negotiations for such release the land corporation assigned and transferred the Cass contract to defendant, Daniels-Jones Company, a corporation formed by the original vendors of the land, Daniels and Jones, and that company thereby became the vendor in the Cass contract. Thereafter Cass assigned the contract to plaintiff, and plaintiff thereby became the vendee and assumed the obligations thereof. The complaint alleges that defendant thereafter repudiated the contract, and refused, upon tender of performance by plaintiff, to perform the same. Whether defendant did repudiate the contract and refuse performance thereof was the principal issue of fact litigated on the trial below. Defendant's assignments of error in this court will be considered in the order presented in the brief of counsel.

1. It is contended that under the terms of the contract of sale plaintiff was limited, in an action for breach thereof, to specific performance, or the recovery of the amount paid upon the purchase price of the land. In this we do not concur. The contention is based upon the following clause of the contract, namely: "In case the title shall be ascertained to be unmarketable to such an extent as to warrant the purchaser in refusing the same, and he shall so refuse the same upon that ground, *or the owner refuses to accept sale,*

the vendor shall not be liable for any damage, and the sum of $640 paid by the purchaser shall be returned to him." The point made is based upon the clause that no damages shall be recoverable if "the owner refuses to accept sale."

This form of contract was evidently prepared for the use of selling agents, and the provision of the contract referred to was designed to protect the agent in case his principal refused to accept or approve the contract of sale. But, however construed, it can have no application to the case at bar. The vendors in this contract were the owners of the land, and they entered into the contract for the sale thereof. They thereby "accepted· sale," within the meaning of the contract.

The further point, in this connection, that defendant, assignee of Stark and McLane, is not liable in damages for a breach of the contract, is not sound. By the acceptance of the assignment, and payment of an instalment of the purchase price, defendant assumed the obligations of the contract and stands in the position of vendor.

2. It is also claimed that there was no such repudiation of the contract by defendant as entitles plaintiff to damages. It appears that subsequent to the assignment of the contract to the defendant there was an attempt to cancel the contract, under the statutes of North Dakota, where the land is situated, for the failure of the vendee to make payment of instalments due upon the purchase price. The statutes were not complied with, and the proceedings for cancellation were ineffectual.

It also appears that defendant sold and conveyed a part of the land, by warranty deed, to one Kruse, and that Kruse executed a mortgage thereon to defendant for the purchase price. Kruse subsequently reconveyed to defendant, and the mortgage was discharged of record. It also appears that subsequent to this reconveyance defendant conveyed the land to one Walton for the consideration of $12,000. It does not appear whether Walton ever reconveyed to defendant. In January, 1910, plaintiff tendered to defendant the whole amount of the unpaid purchase price of the land, with interest, and demanded a conveyance of the land. Defendant refused to accept the money or deed the property. Previously, in an interview

with plaintiff's attorney, defendant refused to recognize the contract as in force, and declared that it had been canceled.

While it is true that the complaint charges a breach of the contract, or rather a repudiation thereof, in two respects only, namely, the conveyance of the land to Kruse, and the refusal of the tender, evidence tending to show all the facts just referred to, including the conveyance to Walton, was received without objection on the trial, and was therefore properly submitted to the jury. An objection to the evidence tending to show the Walton conveyance was made to the concluding question put to the witness, and was sustained upon the ground that the question had already been answered. There was no motion to strike out the other testimony. The deed was excluded, but whether upon the ground that the copy offered was not sufficiently authenticated, or was immaterial under the pleadings, does not appear. But the evidence, though incompetent, was received without objection, and therefore sufficient to prove the fact. Lindquist v. Dickson, 98 Minn. 369, 107 N. W. 958, 6 L.R.A.(N.S.) 729.

The evidence taken as a whole, which is not challenged by the assignments of error, was clearly sufficient to justify the conclusion that defendant unconditionally repudiated the contract and refused to perform the same, thus entitling plaintiff to damages. It is quite probable that defendant's refusal was predicated upon the theory that the contract had been lawfully canceled and terminated for the default in payments by the vendee. And, though the vendee's default clearly appears, defendant was in error. The contract had not been canceled, the proceedings taken for that purpose were insufficient, and at the time the tender of the purchase price was made by plaintiff, it was a valid and enforceable contract. Matteson v. U. S. & C. L. Co., 103 Minn. 407, 115 N. W. 195; Alger-Fowler Co. v. Tracy, 98 Minn. 432, 107 N. W. 1124.

The mere conveyance of the land by the vendor in a contract like that at bar to some third person would not, perhaps, standing alone, amount to an unqualified repudiation of the contract. Duluth L. & L. Co. v. Klovdahl, 55 Minn. 341, 56 N. W. 1119. But such a conveyance, coupled, as in the case at bar, with a refusal to further

recognize the rights of the vendee, and an unconditional refusal to perform, clearly would constitute a breach entitling the vendee to his remedy. Meyers v. Markham, 90 Minn. 230, 96 N. W. 335, 787. Nor does the fact that Kruse reconveyed the property to defendant render the evidence unimportant. It tended to disclose defendant's attitude toward the contract, and that its officers regarded it as having been canceled and at an end. Nor does the fact that plaintiff's tender did not include the full amount of interest to which defendant was entitled defeat the right of action. The tender was not refused on the ground that it was insufficient, but upon the ground that the contract was not then in force.

3. There was no error in calling the attention of the jury to the Walton conveyance, or in permitting witness Rogers to testify concerning the value of the land. The evidence of the Walton conveyance was, as already pointed out, received without objection, and was therefore properly before the jury. In matters respecting the competency of witnesses on the subject of the value of property, the trial court is vested with a wide discretion, in the exercise of which in this case we discover no abuse.

4. The damages awarded plaintiff are large, and were probably based upon the highest estimate given by the witnesses of the value of the land. The question whether an excessive amount was awarded was one peculiarly for the trial court. We discover in the record conflicting opinions upon the question; but the evidence is not so palpably against the verdict as to justify this court, in the face of the approval of the trial court, in setting it aside.

Order affirmed.

JAGGARD, J., took no part.