IN RE ESTATE OF THOMAS G. ORWIG.

**DEEDS:** Consideration—Presumption. It cannot be said that a deed
1 was without full consideration, when, in addition to the presumption of consideration, the deed recites a valuable consideration, and there is no evidence conflicting therewith.

**DEEDS:** Construction—Definite Description of Land—Explanatory
2 Descriptions—Effect. *Definite* descriptions in a deed of the property conveyed will prevail over added clauses which are simply attempts to *explain* that which the definite description has al-

ready made plain. So held where the deed first described the
land by its platted *lot number*, and then added, "*commonly known
as No.* 1210 *Pleasant St.*," it being held that the entire lot was
conveyed, and not that part only which constituted No. 1210
Pleasant St.

EVANS and PRESTON, JJ., dissent.

**DEEDS:** Construction—Ipso Facto Assignment of **Outstanding** **Con-**
3  **tract.** A general, unrestricted warranty deed, on full and valua-
ble consideration, *ipso facto* carries to the grantee the *ownership*
of, and *obligation to perform*, an outstanding contract of the
grantor wherein such grantor had agreed to convey a portion of
said property to a third person upon the payment by said third
party of a stipulated sum, said grantee having notice of such
contract when he accepted his deed.

EVANS and PRESTON, JJ., dissent.

PRINCIPLE APPLIED: A father owned an undivided two
thirds of a lot, and his daughter, the remaining one third.
The father, a widower, contracted to convey a portion of the
lot to one Stanton, after the said Stanton had paid a named sum
by monthly installments. Stanton went into possession, and
commenced to make his payments. Before the payments had
been completed, the father died; but, just prior to his death, he,
on a full and valuable consideration, and by a general, unre-
stricted warranty deed, conveyed his entire two-thirds interest in
the lot to his sister. This sister had full notice of the outstand-
ing contract with Stanton, but no reference was made to said
contract in said deed. This sister ultimately obtained the one-
third interest in the lot owned by the said daughter. After the
death of the father, his administrator claimed that the Stanton
contract was a part of the personal estate left by the father.
The sister claimed that the warranty deed to her *ipso facto* car-
ried to her the ownership of said contract.

*Held*, the sister's contention was correct.

**EXECUTORS AND ADMINISTRATORS:** Collection and Manage-
4  ment of Estate—Instructions by Court. Probate courts have au-
thority to determine whether an administrator, etc., has any
interest, legal or equitable, in property, and to direct its said
officer accordingly.

*Appeal from Polk District Court.*—LAWRENCE DEGRAFF,
**Judge.**

MAY 20, 1918.

REHEARING DENIED MARCH 24, 1919.

THE opinion states the case. Rebecca H. Orwig appeals.—*Reversed.*

*Thos. J. Guthrie, W. P. Bair, Joseph I. Brody,* and *Roy E. Curray,* for appellant.

*A. F. Brown, E. D. Marshall,* and *McLaughlin, Shankland & Lappen,* for appellees.

LADD, J.—Thomas G. and Mary Orwig acquired title to Lot 1 of Hubbell's Subdivision of the northwest quarter of Lot No. 6 of Rose's Addition to the city of Des Moines, under a deed made to them prior to January 1, 1907. In March, 1907, Mary Orwig died, leaving as her only heirs, her husband, Thomas G., and her daughter, Mabel Sweet. By operation of law, therefore, Thomas G. became owner of two thirds of the lot, and Mabel Sweet of one third thereof. On the 1st day of June of the same year, Thomas G. Orwig entered into a contract with George and Mary Stanton to convey the south 42 feet of said Lot 1, upon the payment of the purchase price of $1,200, in installments of $12.50 each, on the first day of each and every month, beginning June 1, 1907. On May 24, 1911, Thomas G. Orwig, being then a single man, executed to Rebecca H. Orwig a warranty deed, reciting "a consideration of labor performed by the grantee herein and for other good and valuable consideration," and describing the property conveyed as "Lot 1 of Hubbell's Addition of the N. W. quarter of Lot 6 of Rose's Addition to Fort Des Moines, commonly known as Number 1210 Pleasant Street." Subsequent to the recording of this deed, suit was instituted by Mabel Sweet against Rebecca H. Orwig, and, on hearing, decree was entered, deciding that the deed was valid, and given for a good con-

sideration. Thereafter, and on February 26, 1913, Mabel Sweet executed a deed conveying to Rebecca H. Orwig the grantor's undivided one third of said Lot 1. The Stantons had gone into possession, at the time of the contract between them and Thomas G. Orwig, and had so continued since; and, though having paid nearly $500 on the contract, suspended payment for a time, and later tendered payment of installments to the administrator of Thomas G. Orwig. The administrator reported these facts to the court, and that four claims filed against the estate of Orwig were unpaid, and prayed for instructions as to whether the contract with the Stantons was an asset of the estate, and should be collected as such, or whether it belonged to Rebecca H. Orwig. The latter pleaded the warranty deed from Orwig and the quitclaim deed from Mabel Sweet, and that, under the former, she (Miss Orwig) acquired the interest of decedent in the contract with the Stantons, and she prayed that the administrator be instructed to turn over to her the said contract and the moneys collected thereon. The sole issue, then, is.whether the contract with the Stantons passed to Rebecca H. Orwig by virtue of the warranty deed from Thomas G. Orwig.

I. The deed from decedent to Miss Orwig recites a valuable consideration; and that there was such is not questioned by any pleading. Moreover, a valuable consideration is to be presumed. Though the grantee, in

1. DEEDS : consideration : presumption.

testifying, spoke of decedent's promise, often repeated, to give her the property, and of his having given her the deed, it appeared that she had worked in grantor's office from March, 1907, until September, 1911, and had kept house for him during this period, and until his death. This evidence is not necessarily inconsistent with the "consideration of labor performed by the grantee herein," recited in the deed. In these circum-

stances, it cannot well be ruled that the deed was without full consideration.

II.   Appellees contend that the deed conveyed only that portion of the lot not occupied by the Stantons, i. e., Lot No. 1210.   The description contained is not subject to this construction:

"Lot 1 of Hubbell's Subdivision of the N. W. quarter of Lot 6 of Rose's Addition to Fort Des Moines, commonly known as Number 1210 Pleasant St.   Excepting an undivided two-sixths (2/6) thereof, which belongs to Mabel S. Sweet, and reserving to myself an estate in said real property for the rest of my natural life.   And I hereby covenant with the said Rebecca H. Orwig that I hold said premises by good and perfect title; that I have good right and lawful authority to sell the same and that they are free and clear from all incumbrances whatsoever, excepting one mortgage of $500 to the Iowa Loan & Trust Company, dated March 15, 1907, and a second mortgage to the Iowa Loan & Trust Company for $300, dated October 5, 1910.   And I covenant to warrant and defend the said premises against the lawful claim of all persons whomsoever.

"Signed this 24th day of May, 1911."

2. DEEDS: construction: definite description of land: explanatory descriptions: effect.

It will be noted that the description of the lot is complete without the added words, *"commonly known as Number 1210 Pleasant St."*   The italics are ours.   This clause must be rejected, for that the preceding description of the property granted is clear and unambiguous, and the clause in italics does not limit or restrict such description.   The rule prevailing in this state is well stated by Cole, J., in *Barney v. Miller*, 18 Iowa 460:

"Where a deed of conveyance contains a general description of the property conveyed, which is definite and certain in itself, and is followed by a particular descrip-

tion also, such particular description will not limit or restrict the grant which is clear and unambiguous by the general description. * * * This is a rule of construction, and is, of course, limited to the cases which are within it. Where the general description is indefinite and uncertain, and reference to the particular description must be had, in order to ascertain with certainty the subject of the grant, in such cases, the rule does not apply. But, then, the whole language will be taken together, and though it may be ambiguous, or even contradictory, if, upon the whole instrument, there is sufficient to manifest the intention of the parties with reasonable certainty, that will suffice."

See, also, as laying down the same rule, *Marshall v. McLean*, 3 G. Greene 363, and *Cummings v. Browne*, 61 Iowa 385. The italicised words are merely by way of explanation or reference, and as such, do not impair or destroy the specific grant preceding. The authorities are uniform in so declaring.

In *Hobbs v. Payson*, 85 Me. 498 (27 Atl. 519), the description was of "all my right, title, and interest in and to all real estate situated in Hope, Warren and Union [Counties]," to which was added, "meaning to convey all my right, title, and interest in the real estate formerly occupied by me," and the latter clause was held not to limit the grant to such estate only, the court saying:

"It rather makes sure that such lands were to be included with those of which the grantor had the visible occupation. They are words of inclusion, and not of exclusion. Words of reference or of explanation never destroy a specific grant. * * * They are useful where the description is imperfect, and where it is aided rather than controlled by them."

In *Barksdale v. Barksdale*, 92 Miss. 166 (45 So. 615), the grant was of "all the land bequeathed to me by the will of my uncle, Hickerson H. Barksdale. All of said lands are

lying and being situated in said Grenada County, known as the Minter Place, and state of Mississippi." The grantor had acquired a tract of land in that county other than "Minter Place," under a will; and, in deciding that it passed under the deed, notwithstanding the expression, "known as the Minter Place," the court said, in part:

"It is perfectly plain that 'all said lands' are in Grenada County, Mississippi. The general rule that, 'where a general description is followed by a particular description, the particular description controls, and the other will be rejected,' is, of course, thoroughly sound; but in every such case, the particular description must be, not a redescription merely, but a second limiting description, a second granting clause. Where the alleged second description in no way limits or cuts down the area of the general granting clause, perfect in itself, then such alleged second description is nothing more nor less than a redescription, a mere reiteration, an effort to give to the land embraced in the general grant some other name by which it may be known in a community, without any purpose in mind to cut down from the extent and area of the perfectly correct general grant. What have we here that is relied on to cut down this good, this perfect, description in the general grant? Nothing save the mere participial phrase, carelessly thrown in, 'known as the Minter Place.' It would be sacrificing substance to form, it would be an utter disregard of the plain intent of the grantor, to say that, after he had plainly declared his purpose to convey all the lands in Grenada County, state of Mississippi, devised to him by his uncle, he had cut down a perfect grant by the careless use of the mere participial phrase, 'known as the Minter Place.' The general principle to which we have above referred had no application to the language of this deed. This is a mere reiteration or attempted redescription of what had already been perfectly conveyed. It does not carve out of the original

grant, or except from the original grant, by a particular description of any kind, any part or parcel of that original grant."

In *Friedman v. Nelson,* 53 Cal. 589, the description was:

"All that beach and water property lying between Folsom Street on the north, Ship's Channel on the east, the city limits on the south, and Price Street on the west, and known on the said map as Blocks Nos. one (1) to thirty-two (32) inclusive."

The land first described was held to have passed, rather than the 32 blocks mentioned. See, also, *Lord v. Wentworth,* 68 N. H. 610 (36 Atl. 17) ; *Rutherford v. Tracy,* 48 Mo. 325 (8 Am. R. 104).

The description in the deed, being clear and unambiguous, was not limited or restricted by italicised words, and the entire lot passed under the deed, and there was no occasion to resort to extrinsic evidence.

III. Did the warranty deed carry the grantor's rights under the contract with the Stantons?

Upon the execution of the contract of sale to the latter, an equitable interest in the land passed to the purchasers, and, for the purposes of descent and taxation, the interest of decedent must have been treated as personal property. But the vendor retained the fee, and was entitled to retain the same until the contract of purchase should be performed.

3. DEEDS: construction: *ipso facto* assignment of outstanding contract.

It might have been forfeited by the vendor for nonpayment, and thereby the purchaser's interest barred in a summary manner. Thus the vendor's interest in the land is much larger than that of a mere mortgagee, and savors so strongly of ownership that a conveyance of the fee upon a valuable consideration is held to carry with it the right to enforce the terms of the contract in connection with the obligation to perform its terms. This

appears from *Ten Eick v. Simpson*, 1 Sandf. Ch. (N. Y.)
244. There, William Simpson contracted to convey the
land, upon the payment of the purchase price, to Gamsey
Hickox. William subsequently conveyed the land to John
Simpson. Thereafter, Hickox assigned the contract to Ten
Eick. The latter paid the purchase price to William by ex-
ecuting to him a note, and thereafter demanded a convey-
ance from John, one of whose defenses was that Ten Eick
had never tendered the purchase price to him. It appeared
that John had paid William fully for the land. The court,
in deciding that John was entitled to the purchase price,
observed that the assignee of the contract of sale—

"Was entitled to the conveyance from John; and why?
Because William had sold and conveyed the land to John,
charged with Hickox's equitable right. By that same con-
veyance, William admits that he received the price of all
the land included in it. He thus ceased to have any interest
in the subject-matter, save his personal liability on the con-
tract, and in that he became the surety for John. John
therefore had the estate, and he had paid for it. Hickox
had an equitable claim for a deed of this small parcel, on
paying the stipulated price to William and his assigns.
John had become 'his assigns,' by the deed of the estate.
And when the time arrived for Hickox to pay the price of
his purchase, he was bound to pay it to John, as well by the
mere letter of his contract as because he looked to John for
a fulfillment of its obligation. The same duty rested upon
the complainant, because he became the assignee of Hickox's
liabilities, as well as his rights, in the subject-matter; and
he also had actual notice of the conveyance by William to
John. The complainant applied to John as 'the assigns' of
William, for a conveyance. The same act which enabled
him to make that application entitled John to the purchase
money. The complainant cannot say that John was 'the
assigns' for one purpose and not for the other. After the

contract was executed, William became, in equity, the trustee of the land for Hickox, having a lien thereon for the purchase money. On his conveying the land to John, with notice of the trust, John became such trustee in equity in his stead, and the lien for the purchase money passed to him, along with the burden of the trust."

In *Taylor v. Stibbert*, 2 Ves. Jr., 437, 439, the vendee of the land with notice was held bound in all respects as the vendor had been, the chancellor (Lord Loughborough) saying:

"The rule that affects the purchaser is just as plain as that which would entitle the plaintiff to specific performance against Wood [the original vendor]; if he is a purchaser with notice, he is liable to the same equity, stands in his place, and is bound to do that which the person he represents would be bound to do by the decree."

These decisions have been quite generally followed, and the rule established by the weight of authority is that a general warranty deed, without limitation, reservation, or exception, and in full consideration, presumed or proven, conveys all the grantor's title to and interest in the realty described therein, including the right of retention of such title and interest, in order to perform a contract of sale to a third party upon the payment of the purchase price of which the vendee is charged with notice, and operates as a transfer of the right to the unpaid purchase money then owed on said contract to the grantor. *Witt v. Boothe,* 98 Kan. 554 (158 Pac. 851); *Mutual Aid B. & L. Co. v. Gashe,* 56 Ohio St. 273 (46 N. E. 985); *Meyers v. Markham,* 90 Minn. 230 (96 N. W. 335); *Southern B. & L. Assn. v. Page,* 46 W. Va. 302 (33 S. E. 336); 39 Cyc. 1604. See *Dickey v. Lyon,* 19 Iowa 544, and *In re Estate of Miller,* 142 Iowa 663.

If the contract of sale previously had been assigned by the vendor to another, or promissory notes evidencing the purchase price had been negotiated, and consideration

in whole or in part withheld in lieu of the price, a different proposition would be presented. *Georgia State B. & L. Assn. v. Faison,* 114 Ga. 655 (40 S. E. 760) ; *Conner v. Banks,* 18 Ala. 42. But no such question is involved here. Decedent retained the contract of sale until his death, and nothing in the deed by him to his sister or in the record before us evidences any purpose that vendor's interest in said contract and right to the remainder of the purchase money should not pass under said deed.

It may be that a naked warranty deed, without more, will not carry to the grantee the purchase price promised for the land as against existing creditors of the grantor, but the purchase price is transferred by deed on valuable consideration if the deed of the grantee is due upon the payment of the price promised his grantor. If this be not so, then, if the purchase price is substantially equal to the value of the land, the grantee by deed gets nothing by the deed save an obligation to convey to the buyer, and if it be the contract that a warranty deed be made on payment of the price, the grantee from the maker of the contract gets none of the purchase price, but may be decreed to convey to the payer of said price with the covenants of warranty. It does not meet this argument to relegate such grantee to suit on the covenants of warranty in his deed, for the grantor may have been insolvent. The grantee should not be bound to assume the burden of carrying out the contract made by his grantor, except on receiving the consideration for that contract, in the absence of anything to indicate that such was the intention of the parties.

The consideration, such as it was, manifestly was thought by the grantor sufficient; and, in the absence of anything tending to show otherwise, he cannot be held to have intended to withhold from the operation of the deed the transfer of the contract, while burdening the grantee with the obligation to comply with its terms. In our opin-

ion, the conveyance with warranties carried with it the obligation to convey that portion of the lot contracted to the Stantons, upon payment to said grantee of the balance owing by said Stantons on the purchase price, and also the right to said purchase money. In other words, the conveyance operated as an assignment to the grantee of the contract between the grantor, Orwig, and the Stantons. We have discovered but one case to the contrary, *O'Brien v. Evans,* 107 Mich. 623 (65 N. W. 571) ; and in that case, the decisions heretofore cited seem to have escaped the attention of the court. Though the proceeding was in probate court, we know of no reason for denying such court the authority to direct an executor or administrator as to his interest in property, whether this be legal or equitable. Surely, the court, as it took cognizance of the issues involved, was clothed with authority to decide, as is now well settled. *In re Receivership of Magner,* 173 Iowa 299; *Tucker v. Stewart,* 121 Iowa 714.

4. EXECUTORS AND ADMINISTRATORS : collection and management of estate : instructions by court.

We reach the conclusion that Rebecca H. Orwig, grantee of the decedent, rather than the administrator of his estate, is entitled to the contract, and to all moneys paid thereon since decedent's death.—*Reversed.*

WEAVER, GAYNOR, SALINGER, and STEVENS, JJ., concur.

EVANS, J. (dissenting). I cannot concur in the majority opinion. This is a controversy over the proceeds of a certain land sale contract and a promissory note given by the debtor therefor, the contract and note being in the hands of the administrator. Rebecca Orwig, a sister of the decedent's, claims to be the owner thereof, under a certain warranty deed executed to her as grantee, by the decedent as grantor, a few days before his death. The description in the warranty deed includes other land, and is sufficiently broad to have conveyed to her the land included in the previous contract of sale, if the grantor had been the owner

thereof. . The decedent was Thomas G. Orwig, who died June 23, 1911. The warranty deed was executed May 24, 1911. The description in the deed was as follows:

"Lot 1 of Hubbell's Subdivision of the N. W. quarter of Lot 6 of Rose's Addition to Fort Des Moines, commonly known as Number 1210 Pleasant Street."

At the time of the execution of such deed, the grantor was the owner of Lot 1, except the south 42 feet thereof. Prior to 1907, he had been the owner, also, of such south 42 feet. On such date, he sold this south 42 feet, together with the improvements thereon, to one Stanton, by a written contract of sale, providing for payments in future installments, with interest, for the full amount of which Stanton executed and delivered his note. Stanton entered into possession of the property, and paid installments of the purchase price to the extent of more than $500, and continued in the undisputed right of possession of the property up to the time of the death of Orwig. The property thus sold had a dwelling house thereon, known as 1208 Pleasant Street. The remainder of Lot 1 constituted the homestead of the decedent, and was known as 1210 Pleasant Street. After Orwig's death, an administrator was appointed, and the Stanton contract and note passed into his possession without any controversy, and have been in his possession ever since, as such.

I. It is important to note first the nature of the proceeding before the trial court from whose order the appeal is taken. There was, in fact, no suit pending in the district court. Rebecca Orwig, as grantee of the deed, made a demand on the administrator for the possession of the note and contract, claiming thereby that her warranty deed carried the proceeds of such contract of sale. The administrator, in his report, asked the court, sitting in probate, for instructions as to who was entitled to such contract. The facts which I have already stated were made to appear by a

stipulation. The probate court held that the administrator was entitled to hold the contract of sale as personalty. It is from this finding that the appeal has been taken. I doubt very much whether there is any tangible record before us upon which this appeal can rest. To add still more to the irregularity of the record, the appellant filed in the lower court her affidavit, reciting alleged .personal transactions and . communications with deceased. This affidavit has been included in appellant's abstract, as a part of the record. Appellee has called our attention to the fact that it was no part of the record below. Nor was there any offer of it as such, except the filing. The appellee filed appropriate objection thereto. This is not denied by appellant. And yet the majority opinion has inadvertently resorted to this affidavit for much of its statement of facts. Passing this irregularity, however, I come to the legal question presented upon the face of the contract of sale and of the warranty deed. The question before us is one of law, purely. No equitable considerations are presented. Let it be conceded that the description in the warranty deed was sufficient to convey to the grantee all the real estate in Lot 1 owned by the grantor at the time of such conveyance. The deed purported to convey only realty; and in a purely legal sense, it could convey nothing else. Did Orwig own the Stanton property at the time of the execution of the warranty deed? The contention for the administrator and the creditors of the estate is that, by the Stanton contract of sale, Orwig had converted such realty into personalty, and that such personalty necessarily passed, at his death, to his administrator. This contention is rejected by the majority opinion, and white-haired cases from other states are cited in support of the argument. I think the question is not fairly open, under our own decisions. The opinion cites the case of *Miller*, 142 Iowa 563, 565. The holding in that case is contrary to the majority opinion.

That case follows previous cases cited therein, which are also contrary to the present holding. In the *Miller* case, the testator had devised to a named devisee all the land of which she should die seized in a certain Lot 1. Before her death, she had sold all the land owned by her in such lot, by a contract of sale precisely similar to the one before us. The terms of the devise were broad enough to cover every interest of realty that she had in such lot. The devisee claimed that he was entitled to the proceeds of such land contract, under his devise. But we held that he was entitled to nothing but realty, and that the testatrix had no realty in Lot 1 at the time of her death. It was held that the administrator took the contract of sale. If there is anything settled by our decisions, it is that such a contract terminates the ownership of the vendor in the real estate and that he holds the legal title only as security, precisely as a mortgagee would hold it. Manifestly, Orwig could have assigned the Stanton contract and the Stanton note to his sister, and such an assignment would have carried the security without any formal conveyance of the real estate. Manifestly, also, with such assignment of contract and note he could have conveyed the property to her as trustee, and as trustee only. Nor do I overlook that it would be within the power of a court of equity, upon a proper showing, to treat the warranty deed as the equitable equivalent of an assignment of the contract of sale and of the note. But this would involve evidence and a consideration of equities. If, for instance, the grantee had been misled, and the grantor were insolvent; if the consideration paid had included the consideration for such land contract; if the real contract in pursuance of which the deed was executed contemplated the proceeds of the land sale contract, then, in any such case, the power of equity would be adequate to extend full relief. I should have no doubt of the power of a court of equity to treat the warranty deed as the

equitable equivalent of an assignment of the contract and note. But this is not an equity suit. No equitable considerations are involved; none are pleaded; none are proved. We may, indeed, infer that the decedent was insolvent, in that the creditors are contending for this fund as the only resource for the payment of claims against the estate; but this in itself creates no equity in her favor. It is not claimed that she was misled in the transaction. Though the deed purports to be for a consideration which is sufficient to give it legal effect, yet, for the purposes of equity, the extent of the consideration is in no manner disclosed. The rights of the appellant, therefore, are purely legal, and not equitable, and must be determined upon the face of her deed. Concededly, a failure of title is shown as to the south 42 feet. What, therefore, is the legal remedy of the grantee? Manifestly, an action for a breach of the covenant of warranty. In pursuing this remedy, however, she stands in no better position than any other creditor of the insolvent. The purely legal effect of the warranty deed does not operate as an assignment of the contract and note. This is the precise holding of the Supreme Court of Michigan in *O'Brien v. Evans,* 107 Mich. 623 (65 N. W. 571), in a very similar case. The effect of the majority opinion is to extend equitable relief to the appellant, though no equitable issue is presented. The very authorities cited therein were chancery cases, and the relief granted therein by the chancellor was upon equitable issues. *Ten Eick v. Simpson,* 1 Sandf. Ch. (N. Y.) 244; *Taylor v. Stibbert,* 2 Ves. Jr., 437, 439.

II. The opinion devotes discussion to the proposition that the last clause of the description in the deed, "commonly known as Number 1210 Pleasant Street," should be deemed as surplusage and nugatory. In my foregoing discussion, I have assumed the correctness of this position. I think, however, that the discussion in the opinion loses

sight of the significance which this clause could have as a circumstance of evidence, in case the appeal were before us in an equitable suit, asking relief upon equitable issues. Surely, in such a case, where a court of equity sought to go behind the written papers, and sought to ascertain the real understanding and intent of the parties antecedent thereto, the fact that there were two properties, known as 1208 Pleasant Street and 1210 Pleasant Street, and that 1210 Pleasant Street was specifically included in the description, whereas 1208 was omitted, would be a proper circumstance for the consideration of the equity court, and would undoubtedly be deemed as of substantial significance. There is a further consideration here which is not considered in the opinion. No inconsistency or ambiguity appears on the face of the deed. By evidence *aliunde,* however, the description in the deed becomes either inconsistent or ambiguous. If ambiguous, the ambiguity is latent, and such ambiguity may be explained by the same kind of evidence as discloses it. In such case, it would be permissible to ascertain the intent of the deed by parol evidence. On the other hand, if the provisions in the deed are to be regarded as inconsistent, rather than ambiguous, then the one part must be deemed to control the other; or rather, one part must give way to the other. In such cases, the authorities are not wholly agreed whether the description "Lot 1" or the street number "1210 Pleasant" should prevail. Some authorities lay stress upon the fact that a lot owner is more likely to know with certainty his street number than he is his lot and block number. *Worthington v. Hyler,* 4 Mass. 196; *Ousby v. Jones,* 73 N. Y. 621. The question is one of considerable difficulty. In view of the fact that it is not decisive here, I should prefer to leave it open for later consideration in an appropriate case, and upon fuller dis-

cussion in the briefs. Upon the record before us herein, I would affirm.

PRESTON, C. J., joins in this dissent.